

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-16-1995

# United States v Johnson

Precedential or Non-Precedential:

Docket 94-7646

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation

"United States v Johnson" (1995). *1995 Decisions.* Paper 223.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/223

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


No. 94-7646


UNITED STATES OF AMERICA,

                              Appellant,

                  v.

        PAUL N. JOHNSON; DARRYL JONNS;
      LAMONT BELL; and CRAIG RICHARDSON,

                PAUL N. JOHNSON,

                              Appellee.




        Appeal from the United States District Court
          for the Middle District of Pennsylvania
                (D.C. Crim. No. 1:CR-94-145-1)


                  Argued April 18, 1995


      Before: STAPLETON, HUTCHINSON and SEITZ, Circuit Judges.

                  Filed:  August 16, 1995



David M. Barasch, United States Attorney
Dennis C. Pfannenschmidt, Assistant U.S. Attorney (Argued)
Office of the United States Attorney
Federal Building
228 Walnut Street
P.O. Box 11754
Harrisburg, PA 17108

  Attorneys for Appellant

Spero T. Lappas, Esquire (Argued)
205 State Street

P.O. Box 808
Harrisburg, PA 17108-0808

Attorney for Appellee

Stefan Presser, Esquire
ACLU of Pennsylvania
125 South 9th Street, Suite 701
P.O. Box 1161
Philadelphia, PA 19105

David Rudovsky, Esquire
ACLU of Pennsylvania
Kairys & Rudovsky
924 Cherry Street, 5th Floor
Philadelphia, PA 19107

Eric B. Henson, Esquire
Jan Fink Call, Esquire
R. David Walk, Jr., Esquire
Hoyle, Morris & Kerr
4900 One Liberty Place
1650 Market Street
Philadelphia, PA 19103

Attorneys for Amicus Curiae ACLU of Pennsylvania

## OPINION OF THE COURT

**SEITZ**, _Circuit Judge_.

Paul N. Johnson ("Defendant") was indicted by a federal grand jury for conspiracy to distribute narcotics, see 21 U.S.C. § 846, possession and distribution of narcotics, in violation of 21 U.S.C. § 841, and related firearms offenses, see 18 U.S.C. §§ 922(g), 924(a)(2), (c)(1), (c)(2). The government appeals here from an order of the district court granting Defendant's pretrial motion to suppress contraband seized by the Pennsylvania State Police during a vehicle search. The district court had

jurisdiction under 18 U.S.C. § 3231, and we have jurisdiction pursuant to 18 U.S.C. § 3731.  The trial has been stayed pending the disposition of this appeal.

**I.  <u>FACTS</u>**

The historic facts are taken from the memorandum decision filed by the district court, <u>see</u> F<small>ED</small>. R. C<small>RIM</small>. P. 12(e), after the hearing on Defendant's motion to suppress the seized materials.

A Pennsylvania State Trooper, while following a vehicle traveling on Interstate 78 toward Harrisburg and driven by Defendant, noticed "several large objects," which appeared to be air fresheners, hanging from its inside rearview mirror.  Because he believed the hanging objects constituted a violation of the Pennsylvania Vehicle Code, <u>see</u> 75 P<small>A</small>. C<small>ONS</small>. S<small>TAT</small>. A<small>NN</small>. § 4524(c) (Supp. 1994),[1] the trooper engaged his overhead lights and signaled for the vehicle to pull to the side of the road.

After both vehicles stopped, the trooper asked Defendant to produce his driver's license and automobile registration card.  Defendant produced a South Carolina driver's license bearing the name "Tracy Lamar Washington."  Although he was unable to produce an automobile registration card, a

---

[1]Section 4524(c) provides in relevant part:
> **(c) Other obstruction.**—No person shall drive any motor vehicle with any object or material hung from the inside rearview mirror . . . as to materially obstruct, obscure or impair the driver's vision through the front windshield or any manner as to constitute a safety hazard.

Title 75, § 4524(c).

violation of the Pennsylvania Vehicle Code, see 75 PA. CONS. STAT. ANN. § 1311(b) (Supp. 1994), Defendant told the trooper that he owned the vehicle. See Appendix at A60-A61. At that point, the trooper went to his patrol car and had the police dispatcher run a check on the vehicle's license number.

While waiting for the vehicle check to be completed, the trooper spoke separately with Defendant and the other occupants of the vehicle. According to the trooper, during these conversations Defendant as well as the passengers seemed "unusually" and "exceptionally" nervous and gave the trooper conflicting statements about the origin and the destination of their trip. Although Defendant knew the name of one of the passengers, he could identify another one only as "T." The trooper testified that the circumstances caused him to suspect that there were narcotics or contraband in the vehicle.

The trooper asked Defendant whether there was anything illegal in the vehicle, and Defendant replied in the negative. The trooper then asked Defendant for his consent to search the car and presented him with a consent form to read and sign. Although Defendant would not sign the form, the trooper testified that he orally consented to the search. In the search that followed, the trooper discovered one-half pound of marijuana, one and one-half ounces of cocaine, one ounce of a substance often used to "cut" cocaine, and a digital scale. At that point, the trooper read the adult occupants of the vehicle their Miranda rights, then placed them under arrest, and seized the contraband.

Defendant was first charged in state court with a number of violations under the Pennsylvania Crimes Code, the Drug Code, and the Vehicle Code. He, thereafter, filed a pretrial motion to suppress the seized drugs and other contraband. The Court of Common Pleas for Berks County, Pennsylvania suppressed the seized materials found in the vehicle because it concluded that they were obtained during an unlawful search. That action was later nolle prossed. See id. at A71.

Defendant was also charged in the district court with federal narcotics and firearms violations. Again, he moved to suppress the same materials obtained by the trooper following the traffic stop. Thereafter, the district court conducted a pretrial suppression hearing and concluded that the traffic stop was used by the trooper as a pretext, that is, a legal justification for an otherwise unconstitutional vehicle stop based on suspicion of narcotics possession. See United States v. Johnson, No. 1:CR-94-145-01, slip op. at 6 (M.D. Pa. Oct. 24, 1994) ("Mem. Op."). As a result, the court found that the subsequent search and seizure were tainted by this pretextual stop and the seized materials were suppressed. The government appeals that order.

## II. DISCUSSION

Some preliminary observations are appropriate to an understanding of the structure of this opinion.

We emphasize that this is an appeal by the government from an order of the district court granting Defendant's pretrial suppression motion. In the district court, Defendant set forth

what we understand to be two grounds for suppression: (1) the traffic stop that eventuated in the seizure of the illegal materials was unconstitutional, thus tainting the seizure; and (2) the real reason for the traffic stop was to find a way to search for drugs and not to enforce the traffic laws. As we read the memorandum decision of the district court, it rejected Defendant's first ground but relied on the second, i.e., pretext, to grant his motion.

On appeal the government attacks the district court's pretext finding, which, of course, the Defendant supports. We will initially address whether the district court erred in its ruling on the first ground in Defendant's motion. We do so because if the district court erred in that determination, it would be unlikely that the more complex pretext issue would be decided. See, e.g., United States v. Shabazz, 993 F.2d 431, 435 n.3 (5th Cir. 1993).

### A. Was The Traffic Stop Justified?

The United States Supreme Court has held that stopping a car and detaining its occupants is a seizure under the Fourth Amendment. See United States v. Hensley, 469 U.S. 221, 226 (1985); see also United States v. Velasquez, 885 F.2d 1076, 1081 (3d Cir. 1989), cert. denied, 494 U.S. 1017 (1990). However, a stop to check a driver's license and registration is constitutional when it is based on an "articulable and reasonable suspicion that . . . either the vehicle or an occupant" has violated the law. Delaware v. Prouse, 440 U.S. 648, 663 (1979);

see Velasquez, 885 F.2d at 1081; see also 75 PA. CONS. STAT. ANN. § 6308(b) (Supp. 1995).[2]

As a general rule, the burden of proof is on the defendant who seeks to suppress evidence. See United States v. Acosta, 965 F.2d 1248, 1256 n.9 (3d Cir. 1992) (citations omitted). However, once the defendant has established a basis for his motion, i.e., the search or seizure was conducted without a warrant, the burden shifts to the government to show that the search or seizure was reasonable. See United States v. McKneely, 6 F.3d 1447, 1453 (10th Cir. 1993).

The trooper testified that he stopped Defendant's vehicle because, based on what he saw, he believed it was in violation of the Pennsylvania Vehicle Code. See Appendix at A57. As we read the district court's memorandum decision, it accepted this testimony. See Mem. Op. at 12, 14. This finding of fact exceeds the showing required of the government to justify the traffic stop under Prouse, which requires only an articulable and reasonable suspicion that the car was in violation of Pennsylvania law. See, e.g., Pennsylvania v. Mimms, 434 U.S. 106, 109 (1977); Velasquez, 885 F.2d at 1081. Because this finding is not clearly erroneous, we conclude that the district court

---

[2]Under section 6308(b) of the Pennsylvania Vehicle Code, a trooper who has reasonable and articulable grounds to believe that a vehicle or driver is in violation of the Vehicle Code may stop the vehicle. See Commonwealth v. Benton, 655 A.2d 1030, 1033 (Pa. Super. Ct. 1995). Although an actual violation need not be established, a reasonable basis for the officer's belief is required to validate the stop. See id.; Commonwealth v. McElroy, 630 A.2d 35, 40-41 (Pa. Super. Ct. 1993).

correctly determined that the trooper's basis for the stop, standing alone, met Fourth Amendment requirements.

## B. The Pretext Issue

Although the traffic stop itself met constitutional requirements, the district court suppressed the seized materials because it found that the traffic stop was merely a pretext to find a basis to thereafter search Defendant's vehicle for narcotics and, as such, was violative of the Fourth Amendment. See Mem. Op. at 16. We now determine whether the district court applied the proper standard in determining that the stop was pretextual. This important issue presents a question of law subject to plenary review. See United States v. Deaner, 1 F.3d 192, 196 (3d Cir. 1993).

In evaluating the constitutionality of a police traffic stop, most courts agree that an objective analysis of the facts and circumstances surrounding the stop is appropriate. See, e.g., Scott v. United States, 436 U.S. 128, 137–38 (1978); United States v. Whren, 53 F.3d 371, 374 (D.C. Cir. 1995); United States v. Hawkins, 811 F.2d 210, 213 (3d Cir.), cert. denied, 484 U.S. 833 (1987). However, courts of appeals have had some difficulty in applying this objective assessment to the argument that a traffic stop, otherwise lawful, is really a pretext to search for evidence of an unrelated serious crime and, thus, unlawful. Neither the Supreme Court nor this court seems to have directly addressed this constitutional issue.[3]

---

[3]Some courts have characterized this court's opinion in United States v. Hawkins, 811 F.2d 210 (3d Cir. 1987) as endorsing the

The majority of the courts of appeals have adopted the so-called "authorization test." Under that approach, materials seized following a traffic stop are admissible so long as a reasonable police officer <u>could</u> have made the stop (also known as the "could" test). These courts simply inquire whether, <u>at the time of the stop</u>, the police officer reasonably believed the defendant was committing a traffic offense, and whether the law authorized a stop for such an offense.[4]

A minority of the courts of appeals have adopted the "usual police activities" test (also known as the "would" test). Applying that test to a traffic stop, materials seized are admissible as evidence only if a reasonable police officer <u>would</u> have made the stop in the absence of an invalid purpose.[5] These courts inquire not only into the legality of the stop, but also into its conformity with regular police practices.

---

"authorization" test. <u>See, e.g.</u>, <u>United States v. Scopo</u>, 19 F.3d at 783; <u>United States v. Ferguson</u>, 8 F.3d 385, 389 (6th Cir. 1993). In <u>Hawkins</u>, the police gave a pretext, a traffic violation, as the reason for stopping a vehicle whose occupants, they believed, were involved in the purchase and sale of narcotics. This court, without relying on the pretext asserted by the police, found an objectively reasonable basis for the stop. <u>See</u> <u>Hawkins</u>, 811 F.2d at 215. It stated that the pretext used by the police did not render <u>an otherwise constitutional search invalid</u>. <u>See id.</u> Therefore, the court was not required to address the allegedly pretextual nature of the traffic stop.

[4] <u>See</u> <u>Whren</u>, 53 F.3d at 375-76; <u>Scopo</u>, 19 F.3d at 782-84; <u>United States v. Jeffus</u>, 22 F.3d 554, 557 (4th Cir. 1994); <u>United States v. Bloomfield</u>, 40 F.3d 910, 915 (8th Cir. 1994); <u>United States v. Roberson</u>, 6 F.3d 1088, 1092 (5th Cir. 1993); <u>Ferguson</u>, 8 F.3d at 389-91; <u>United States v. Hadfield</u>, 918 F.2d 987, 993 (1st Cir. 1990), <u>cert. denied</u>, 500 U.S. 936 (1991); <u>United States v. Hope</u>, 906 F.2d 254, 257-58 (7th Cir. 1990).

[5] <u>See</u> <u>United States v. Millan</u>, 36 F.3d 886, 888 (9th Cir. 1994); <u>United States v. Dirden</u>, 38 F.3d 1131, 1139-40 (10th Cir. 1994); <u>United States v. Harris</u>, 928 F.2d 1113, 1116-17 (11th Cir. 1991).

In this case the district court adopted the minority approach, the usual police activities test.  It held that a "reasonable" trooper would not have stopped the vehicle for the minor traffic violation here involved, absent a "hunch" that the occupants were trafficking in narcotics. See Mem. Op. at 15–16. The usual police activities test, the court reasoned, "is most faithful to the spirit of the Fourth Amendment." Id. at 13.

Thus, we must decide, under a plenary standard of review, whether to adopt the minority standard employed by the district court or the rule of the majority of the courts of appeals.

The Supreme Court has consistently held that an analysis of Fourth Amendment issues involves "`an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time' and not on the officer's actual state of mind at the time the challenged action was taken." Maryland v. Macon, 472 U.S. 463, 470–71 (1985) (quoting Scott, 436 U.S. at 136); see Hawkins, 811 F.2d at 213–14.  "[T]he fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action so long as the circumstances, viewed objectively, justify that action." Scott, 436 U.S. at 138; see United States v. Villamonte–Marquez, 462 U.S. 579, 584 n.3 (1983) (stating that the fact that customs officers boarding a ship pursuant to a statute authorizing a check of the vessel's documentation suspected that the vessel carried marijuana was not a violation

of the Fourth Amendment); Hawkins, 811 F.2d at 214 ("Both the Supreme Court and this court have held that a seizure that is valid based upon the stated purpose cannot be challenged on the grounds that the seizing officers were in fact motivated by an improper purpose."); see also Velasquez, 885 F.2d at 1081. We conclude that the authorization test incorporates this objective analysis.

On the other hand, the usual police activities test applied by the district court is not a wholly objective test because it requires a reviewing court to examine the motivations and hopes of a police officer. See Mem. Op. at 9 ("The crux of [the would] test is an objective analysis of what a reasonable police officer would have done under the same circumstances absent any underlying improper purpose."). This approach would require a court to move past the objective facts and circumstances, i.e., the traffic violation, and attempt to ascertain an officer's true state of mind.

In response to the government's argument seeking to have us apply the majority view, Defendant and amicus, ACLU, contend that the authorization standard will do nothing to restrain the arbitrary exercise of discretionary police power. See Defendant's Br. at 12; ACLU Br. at 11–14; see also United States v. Cannon, 29 F.3d 472, 474–75 (9th Cir. 1994) ("In the absence of some limit on police power to make such stops, thousands of everyday citizens who violate minor traffic regulations will be subject to unfettered police discretion as to whom to stop."); United States v. Guzman, 864 F.2d 1512, 1516

(10th Cir. 1988); 1 WAYNE R. LAFAVE, SEARCH AND SEIZURE, A TREATISE ON THE FOURTH AMENDMENT § 1.4(e), at 28 (Supp. 1995) (arguing that the authorization test has "conferred upon the police a virtual carte blanche to stop people because of the color of their skin or for any other arbitrary reason").

However, the police are subject to a number of statutory and common law limitations. For example, officers cannot make a traffic stop without probable cause or a reasonable suspicion, based on articulable facts, that a traffic violation has occurred. See Prouse, 440 U.S. at 661; Velasquez, 885 F.2d at 1081; see also 75 PA. CONS. STAT. ANN. § 6308(b). Thus, in evaluating the constitutionality of a traffic stop, a court is free to examine the sufficiency of the reasons for the stop as well as the officer's credibility.

Furthermore, a traffic stop must be reasonably related in scope to the justification for the stop. See Berkemer v. McCarty, 468 U.S. 420, 439 (1984); Bloomfield, 40 F.3d at 915; Scopo, 19 F.3d at 785; United States v. Hassan El, 5 F.3d 726, 731 (4th Cir. 1993), cert. denied, 114 S. Ct. 1374 (1994). To justify a greater intrusion unrelated to the traffic stop, the totality of the circumstances known to the police officer must establish reasonable suspicion or probable cause to support the intrusion. See United States v. Ramos, 42 F.3d 1160, 1163 (8th Cir. 1994); United States v. Hernandez, 872 F. Supp. 1288, 1293–94 (D. Del 1994). Clearly, a lawful traffic stop is not "carte blanche" for an officer to engage in other unjustified action.

In addition, the authorization test ensures that the validity of a traffic stop "is not subject to the vagaries of police departments' policies and procedures" concerning the kinds of traffic offenses which are enforced. Ferguson, 8 F.3d at 392; see Whren, 53 F.3d at 376; Scopo, 19 F.3d at 784. Therefore, the validity of a traffic stop should be evaluated on the officer's objective legal basis for the stop and not on whether the police department routinely enforces a particular traffic law or assigns a traffic officer to make such stops. It is not apparent why police officers should be precluded from making an otherwise valid traffic stop merely because by doing so they would be departing from some routine.

We conclude that the district court erred in adopting and applying the usual police activities test rather than the authorization test in deciding that the basis for the vehicle stop was a pretext to search for drugs. In adopting the majority standard, we recognize that any rule governing this issue can be abused by the authorities. But, that concern is inherent in the nature of law enforcement. Based on the foregoing, we now examine Defendant's pretext argument in light of the standard we have adopted.

We next consider whether we should go on and apply the standard we adopt to Defendant's pretext argument or remand it for resolution by the district court. Because the district court has already made the relevant factual findings, we will decide this issue.

As we have noted, the district court found that the trooper reasonably believed that Defendant's vehicle was in violation of the Pennsylvania Vehicle Code. See supra at 7. Applying the authorization test, we hold that the stop was not unconstitutionally pretextual under the Fourth Amendment because it was authorized under Pennsylvania law. See supra note 2.

## III. CONCLUSION

The suppression order of the district court will be vacated and Defendant's motion to suppress will be remanded to the district court to decide whether the subsequent consent and search were valid.