**UNITED STATES of America**

v.

**Michael ALEXANDER, Defendant.**

**No. CRIM. A. 99–311.**

United States District Court,
E.D. Pennsylvania.

Nov. 5, 1999.

**490**

J. Huntley Palmer, U.S. Attorney's Office, Philadelphia, PA, for U.S.

Joseph C. Santaguida, Philadelphia, PA, for Defendant.

### MEMORANDUM & ORDER

KATZ, Senior District Judge.

Michael Alexander, the defendant, is charged in a three-count indictment alleging possession with intent to distribute a controlled substance, carrying a firearm during and in relation to a drug trafficking offense, and possession of a firearm. The defendant moved to suppress the introduction into evidence of approximately four pounds of marijuana and a loaded semi-automatic pistol. These items were seized from the defendant's person and car which were searched on February 17, 1999.

Upon consideration of the submissions of the parties and after a hearing, the court ruled from the bench that the evidence would be suppressed because of the government's failure of proof. The court now writes briefly to supplement that ruling.

*Findings of Fact*

Officers Caprara, Vega, Tolliver, and Cavalieri are patrol officers with the Philadelphia Police Force. Officers Caprara and Tolliver are partners; Officers Vega and Cavalieri are partners. Officers Caprara, Vega, and Tolliver testified at the suppression hearing. Officer Cavalieri, however, was not present.

On February 17, 1999, at approximately 6:00 p.m., the officers were in their respective patrol cars when they heard a radio message stating that a black man driving a brown station wagon was possibly selling drugs on the 2300 block of Pierce Street. Without communication with each other, the two cars proceeded to Pierce Street. Officer Caprara and Officer Tolliver arrived at the location first and saw a brown car with a black male driver.

At this point, very significant differences in the testimony begin to emerge.[1] For present purposes, the court accepts the government's basic rendition of events because, even under that portrayal, the search was improper.

---

[1] Officer Caprara seemed to indicate that the car was driving when she saw it but that the police officers did not turn on their sirens or otherwise force the car to stop; rather, she stated that the car stopped about ten feet from a stop sign. Officer Tolliver gave similar testimony. In contrast, the defendant testified that his vehicle was blocked by the two cars driven by the officers, and this testimony was corroborated by another witness, Daniel Harris, who saw the events at issue while he was at a nearby Chinese restaurant or store. Alexander and Harris also present different versions of subsequent events. Most significant-

ly, both testified that Alexander was removed from the car almost immediately after being stopped and was then taken away in a patrol car. Alexander testified that Officer Caprara said that he was being stopped for smoking marijuana while he was driving and that no marijuana was seized from his person at all. In short, if the court were to accept the complete version of events as portrayed by Alexander and Harris, Officer Cavalieri did not approach the vehicle from the passenger side and did not seize the marijuana from the coat pocket at all.

Believing this vehicle to be the one referred to in the anonymous tip, Officer Caprara approached Michael Alexander on the driver's side of the vehicle, and began a conversation about whether or not the car belonged to him. At the time of this conversation and during all succeeding events, Mr. Alexander was wearing a bulky, long black jacket with deep pockets. Less than a minute after Officer Caprara began this conversation, Officer Cavalieri approached the car from the passenger side, followed by his partner, Officer Vega. Approximately ten seconds later, Officer Cavalieri reached into the car through the passenger window, reached into the defendant's jacket pocket, and removed a baggie. Officer Cavalieri told Officer Caprara that the baggie contained narcotics and that she should tell the defendant to get out of the car. Officer Caprara did so. She then handcuffed the defendant and proceeded to pat him down. In the left jacket pocket, Officer Caprara found another large baggie containing eleven smaller baggies holding a green leafy substance she believed to be marijuana. Officer Caprara then put the defendant in the patrol car, and the officers proceeded to search the vehicle. In the car, they found a Shop-rite shopping bag containing four large plastic bags of what the officers believed to be marijuana. They also discovered a weapon that turned out to be a 9–millimeter Beretta semi-automatic pistol wedged under the dashboard to the right of the steering wheel. Subsequent testing revealed the green substance in the baggies and the shopping bag to be marijuana.

*Conclusions of Law*

■ The Fourth Amendment of the United States Constitution prohibits unreasonable searches and seizures, and evidence that is obtained in violation of the command of this amendment may be excluded. Ordinarily, it is the defendant's burden to show that evidence should be suppressed. However, when, as in this case, the search and seizure was conducted without a warrant, "the burden shifts to the government to show that the search or seizure was reasonable." *United States v. Johnson,* 63 F.3d 242, 245 (3d Cir.1995). In this case, the government did not meet its burden.

■ Even assuming that there was no Fourth Amendment violation up to the point that Officer Caprara conversed with Mr. Alexander, the court finds that the seizure of the marijuana from the defendant's pocket was improper. The government attempts to justify this seizure under the plain view doctrine. For such a seizure to be proper, four factors must be present: (1) the officer must have arrived lawfully at the vantage point from which the object was seen; (2) the object must have been in plain view; (3) the incriminating character of the object must have been immediately apparent; and (4) the officer must have had lawful right of access to the object seized. *See Horton v. California,* 496 U.S. 128, 142, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990); *see also United States v. Menon,* 24 F.3d 550, 559 (3d Cir.1994); *United States v. Benish,* 5 F.3d 20, 24 (3d Cir.1993); *United States v. McCoy,* 824 F.Supp. 467, 472 (D.Del.1993).

The government failed to demonstrate either that the object was in plain view or that the incriminating nature of the object was immediately apparent. While Officer Cavalieri apparently told the other officers that he had seen an object sticking out of the defendant's pocket, there was obviously no testimony as to what Officer Cavalieri actually saw, given that he did not testify. Officer Vega, who was standing by the rear passenger side window behind Officer Cavalieri, stated that he did not see anything sticking out of the defendant's pocket. Nor did either of the other officers testify that they were in a position to see anything. In addition, the testifying officers agreed that it was dark at the time of the seizure, although the area was lit with street lamps.

The nature of the jacket itself also hampers the government's case. This jacket was entered into evidence, and the defendant testified that this was the jacket he

had worn on the night of the arrest.[2] The pockets of this jacket were very deep, and when the baggie of marijuana seized from the jacket pocket was put into one of the pockets in court, it did not in any way protrude. Also, as the defendant pointed out, he was sitting down at the time of the seizure, and the design of the pockets made it unlikely that the marijuana would have fallen out in that position.

The government placed a great deal of emphasis on the fact that, according to the testimony of Officer Caprara and Officer Vega, Officer Cavalieri seized the baggie almost immediately. From this, the government argued that it is likely that Officer Cavalieri saw something incriminating; otherwise, he would not have had any reason to reach into the defendant's pocket. The difficulty with this contention is that there is no testimony as to what Officer Cavalieri actually saw. There is no basis to conclude that he actually saw marijuana protruding from the pocket, and, if he only saw a baggie or the outline of a baggie, there would be further questions as to whether this alone was a sufficient basis to search the defendant's pockets. This issue is particularly troublesome given the defendant's inability to cross-examine Officer Cavalieri.

The government also argued extensively that the court should give Mr. Alexander's own testimony little or no credibility because, when he took the stand, he initially answered "no" to his own attorney's question of whether there was any marijuana in the car that night. As the court explained in the bench ruling, the defendant was clearly nervous, and he later explained that he believed counsel to have been asking about whether there was marijuana in his jacket pocket that night.

Based on these considerations, the court finds that the government has not met its burden of demonstrating that the baggie containing marijuana was in plain view or that the incriminating nature of the sub-

stance was immediately apparent. Obviously, without Officer Cavalieri, there was no direct testimony on the subject, and, as described, the circumstantial nature of the government's case was weak. Thus, the seizure of the marijuana itself was improper. The later discovered marijuana and the gun must also be suppressed because they were discovered only in the subsequent custodial arrest and search of the defendant's person and car following the seizure of the marijuana from his pocket. *See, e.g., Wong Sun v. United States,* 371 U.S. 471, 484–85, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

*Conclusion*

Because the government did not demonstrate that the evidence initially seized from the defendant met the test for a plain view seizure, the defendant's motion must be granted in full.

### ORDER

**AND NOW,** this 5th day of November, 1999, upon consideration of the Defendant's Motion to Suppress Physical Evidence, the government's response, and after a hearing, it is hereby **ORDERED** that the Motion is **GRANTED.**

The trial in this matter is continued until such time as the government makes a decision as to whether to appeal this decision. If the government does appeal, this matter is continued until such time as the appeal is completed. *See* 18 U.S.C. § 3162(h)(8)(A). As stated from the bench, given the significance of the Fourth Amendment issues in this case, both in general terms and with respect to the trial of this defendant, the government should have the opportunity to appeal this decision should it deem proper. Consequently, it would be inappropriate to conduct a trial prior to final disposition of this matter. Thus, the "ends of justice served by taking such action outweigh the best interest of

---

**2.** Although none of the officers could remember whether this was in fact the same jacket, none of them denied defendant's contention.

As stated in the previous section, the court finds that this was the jacket worn by the defendant on February 17, 1999.

the public and the defendant in a speedy trial." *Id.*