

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-5-2007

# USA v. Fleetwood

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-2079

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"USA v. Fleetwood" (2007). *2007 Decisions*. Paper 1008.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1008

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 06-2079
_____

UNITED STATES OF AMERICA

v.

KENNETH FLEETWOOD
a/k/a
MICHAEL R. JOHNSON


Kenneth Fleetwood,

Appellant

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 05-cr-00011E)
District Judge:  Honorable Maurice B. Cohill, Jr.
_____

Argued May 16, 2007

Before:  FISHER and ROTH, *Circuit Judges*, and RAMBO,* *District Judge*.

(Filed June 5, 2007)

*The Honorable Sylvia H. Rambo, United States District Judge for the Middle
District of Pennsylvania, sitting by designation.

Thomas W. Patton (Argued)
Office of Federal Public Defender
1001 State Street
1111 Renaissance Centre
Erie, PA  16501
    *Attorney for Appellant*

Robert L. Eberhardt
Laura S. Irwin (Argued)
Office of United States Attorney
700 Grant Street, Suite 4000
Pittsburgh, PA  15219
    *Attorneys for Appellee*

———————

OPINION OF THE COURT
———————

FISHER, *Circuit Judge*.

This case comes to us on appeal from a decision of the District Court denying Kenneth Fleetwood's motion to suppress evidence recovered after the vehicle in which he was riding was stopped.  Fleetwood alleges that the police lacked the requisite reasonable suspicion to conduct a traffic stop pursuant to *Terry v. Ohio*, 392 U.S. 1 (1968).  We disagree and, for the reasons set forth below, will affirm the decision of the District Court.

I.

Because we write exclusively for the parties who are familiar with the factual and procedural history of this case, we will set forth only those facts necessary to our analysis.  On the evening of March 2, 2005, two members of the Erie Area Gang Law Enforcement ("EAGLE") Task Force, Troopers Houk and Toski, were conducting surveillance near

2

448 East 14th Street in Erie, Pennsylvania. 448 East 14th Street, a multi-family dwelling, had come to the attention of the EAGLE Task Force in January 2005 as the location used by a group of drug dealers based out of Cleveland, Ohio. The EAGLE Task Force had conducted a trash pull outside the apartments in mid-January and discovered baggies with cocaine residue.

On the night of March 2, Houk and Toski observed a female driver arrive in a white Cadillac, which she parked in front of the building. Houk attempted to run the license plate number, but had trouble discerning the first letter on the plate due to some snow on the plate. After running the plate using two different number/letter combinations, he found a combination that was registered to a white Cadillac. In order to confirm that they had the right license plate, Houk and Toski contacted Trooper Wagner, a nine-year member of the EAGLE Task Force, and requested that he drive past the Cadillac to confirm the license plate. Wagner drove past the Cadillac at a normal rate of speed and, while indicating that snow partially obscured the plate, was able to verify the license plate number.

After verifying the license plate, Houk and Toski observed two unidentified black males leave 448 East 14th Street and get into the Cadillac. After passing this information on to Wagner, the three officers, in two undercover police vehicles, followed the Cadillac. During the trip, Wagner noted that the Cadillac had violated two traffic laws by entering an intersection against a red light and by swerving in a careless manner.

3

The Cadillac arrived at 2125 June Street, a single-family dwelling where the EAGLE Task Force had conducted a controlled buy of crack cocaine in January 2005. Shortly after arriving at 2125 June Street, Toski saw the black male who had been sitting in the front passenger seat of the Cadillac emerge from the house and get back into the front seat.[1] At this point, the EAGLE Task Force officers contacted the Erie Police Department and requested that a marked Erie Police car stop the white Cadillac based on reasonable suspicion that a traffic violation had occurred and that drug activity was underway.

Uniformed Erie Police Officers arrived in two marked police vehicles and conducted a traffic stop. While the driver and other passengers of the white Cadillac produced identification, the front passenger, who identified himself as Michael Johnson, could not. The officers, therefore, asked him to step from the vehicle. As the front passenger stepped out of the car, a baggie that appeared to contain crack cocaine fell from him. The front seat passenger was then searched, and additional baggies of crack cocaine, a large amount of money and a scale were found. The police arrested the front seat passenger whose real name was later discovered to be Kenneth Fleetwood, not Michael Johnson.

After he was indicted for possession with intent to distribute 50 grams or more of cocaine base in violation of 21 U.S.C. §§ 841(a) and (b)(1)(A), Fleetwood moved to

---

[1]The officers did not observe the man exiting the car.

4

suppress the evidence and statements that were the result of the March 2 traffic stop. Fleetwood argued that the traffic stop was unjustified. The Government responded by asserting that the traffic stop was justified by three traffic violations or, alternatively, by the EAGLE Task Force officers' reasonable suspicion that drug activity was afoot. As its primary witness, the Government presented Wagner who testified as to the obstruction of the license plate, the other two traffic violations he witnessed, and the reasons for reasonable suspicion of drug activity. Fleetwood relied primarily on the testimony of Adrianna Havelka, the driver of the white Cadillac. Havelka testified that while she may have slid into the intersection, she did not swerve recklessly.

Following the hearing, the District Court denied the motion to suppress in a short oral opinion. Fleetwood proceeded to plead guilty, upon the condition that he could appeal the denial of the motion to suppress. He was sentenced to 168 months imprisonment and timely filed this appeal.

II.

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. In the Fourth Amendment context, a defendant challenging a search or seizure typically bears the burden of proving that it was illegal. However, the government bears the burden of proving that a search is reasonable when, as here, it is conducted without a warrant. *United States v. Johnson*, 63 F.3d 242, 245 (3d Cir. 1995). When reviewing a district court's decision to deny a suppression motion, we review its legal conclusions *de novo*. *United States v. Myers*, 308 F.3d 251, 255 (3d Cir. 2002). Its factual findings we review

5

for clear error, overturning them "only when after reviewing the entire evidence, we are left with the definite and firm conviction that a mistake has been committed." *United States v. Acosta*, 965 F.2d 1248, 1255 (3d Cir. 1992) (internal quotation marks and citation omitted). When conducting such a review, we construe the record in the light most favorable to the government. *Myers*, 308 F.3d at 255. However, we may not supply testimony that the government failed to provide or draw inferences that are not supported by the record. *Id.*

III.

It is undisputed by both parties that stopping and detaining a car and its occupants constitutes a seizure under the Fourth Amendment, *see Johnson*, 63 F.3d at 245, and that a passenger of a vehicle has standing to challenge the stop of that vehicle, *see United States v. Mosley*, 454 F.3d 249, 253 (3d Cir. 2006). What the parties dispute is whether there was reasonable suspicion to conduct the March 2 traffic stop. In *Terry*, the Supreme Court held that, under certain circumstances, a police officer need not have probable cause to detain a suspect. Rather, when an officer is only making a brief, investigatory stop, he may do so whenever he has a reasonable, articulable suspicion that criminal activity is afoot. 392 U.S. at 30. We have explained that reasonable suspicion requires a "particularized and objective basis for suspecting a particular person stopped of criminal activity." *United States v. Brown*, 448 F.3d 239, 246 (3d Cir. 2006) (internal quotation marks and citations omitted). "Reasonable, articulable suspicion is a less demanding standard than probable cause and requires a showing considerably less than

6

preponderance of the evidence, and only a minimal level of objective justification is necessary for a *Terry* stop." *United States v. Delfin-Colina*, 464 F.3d 392, 396 (3d Cir. 2006) (internal quotation marks and citations omitted).

The *Terry* standard has been applied to the stop of a vehicle. *See Johnson*, 63 F.3d at 245 ("However, a stop to check a driver's license and registration is constitutional when it's based on an 'articulable and reasonable suspicion that . . . either the vehicle or an occupant' has violated the law." (quoting *Delaware v. Prouse*, 440 U.S. 648, 663 (1979))). Therefore, whenever an officer has a reasonable suspicion that either the vehicle or one of its occupants has violated the law, he may conduct a stop of that vehicle to investigate. When the suspected violation of law is a traffic violation, the traffic stop will be deemed reasonable "when an objective review of the facts shows that an officer possessed specific, articulable facts that an individual was violating the traffic law at the time of the stop." *Delfin-Colina*, 464 F.3d at 398. This standard is not particularly rigorous, as no traffic law need actually have been broken, nor does the stopping officer have to be correct regarding the facts. "[A]n officer need not be factually accurate in her belief that a traffic law had been violated but, instead, need only produce facts establishing that she reasonably believed that a violation had taken place. Consequently, a reasonable mistake of fact 'does not violate the Fourth Amendment.'" *Id.* (quoting *United States v. Chanthasouxat*, 342 F.3d 1271, 1276 (11th Cir. 2003)). In the case currently before us, the March 2 stop of the white Cadillac was justified by two reasons. We address each in turn.

7

A.

At the suppression hearing, the Government first supported the March 2 traffic stop by citing three traffic violations. We focus only on one of those violations, the violation for an obstructed license plate. We review the District Court's finding regarding the obstruction of the license plate for clear error.[2] Pennsylvania law makes it "unlawful to display on any vehicle a registration plate which . . . is otherwise illegible at a reasonable distance or is obscured in any manner." 75 Pa. Cons. Stat. § 1332(b)(3). The Pennsylvania Superior Court has held that a license plate that is obscured by mud such that an officer can read the numbers when close to the car, but not when following approximately four lengths behind, provides probable cause to suspect a violation of section 1332(b)(3). *Commonwealth v. Wilbert*, 858 A.2d 1247, 1249 (Pa. Super. Ct. 2004).

The result based on the traffic stop before us is dictated by our holding in *Delfin-Colina*, where we held that the proper inquiry is not whether a traffic violation actually

[2]We note that, pursuant to Rule 12(e) of the Federal Rules of Criminal Procedure, a district court is required to place its "essential findings" on the record. We agree with defense counsel that the District Court's findings in the case before us were less than complete. However, we read the District Court's opinion as explicitly finding that there was reasonable suspicion of an obstructed license plate. However, even if we did not, we may still uphold the District Court's finding if, upon our own review of the record, it is clear that there was reasonable suspicion to stop the vehicle. *See*, *e.g.*, *Acosta*, 965 F.2d at 1255 (looking to the record where findings not explicitly in the district court's opinion); *United States v. Ramstad*, 219 F.3d 1263, 1265 (10th Cir. 2000) ("[R]emand may be unnecessary where the proceedings below resulted in a record of amply sufficient detail and depth from which the determination may be made . . . .") (internal quotation marks and citation omitted).

occurred, but rather whether there are facts presented that would lead a reasonable officer to believe that a violation may have occurred. In *Delfin-Colina*, a state trooper reasonably, but wrongly, believed that a pendant hanging from a driver's rear-view mirror violated section 4524(c) of the Pennsylvania Traffic Code, which prohibits the placement of objects from the inside rearview mirror in such a position as to materially obstruct, obscure or impair the driver's vision. 464 F.3d at 394 (citing 75 Pa. Cons. Stat. § 4524(c)). We found that a simple pendant could not meet the requirements of section 4524(c). However, because the trooper's belief that the pendant obstructed the driver's view was reasonable, the subsequent stop for the traffic violation was legal.

Similarly, in this case, Wagner had a reasonable belief that the snow on the white Cadillac's license plate obstructed it such that it was a violation of Pennsylvania law. He testified to that belief at least five times during the suppression hearing.[3] The District

---

[3]The testimony states:

"A    There was snow on the registration plate which prevented a complete
         view of the registration plate."

(App. 115.)

"Q    Did you also observe that the plate was partially obscured by snow?
A    Yes, I did, sir."

(App. 116.)

"Q    Can you describe for Judge Cohill the weather conditions on that day
         as you recall it?
A    Cold and snow.
Q    And the obscuring of the license plate, what was it obscured with?
A    It was obscured with snow."

(App. 118.)

"Q    [The car d]oesn't have snow on the trunk of the car?
A    I don't believe it did.
Q    But, it has snow on the license plate?

9

Court found Wagner credible. We make no determination as to whether snow partially covering the first letter of a license plate such that it is difficult to read except up close is a violation of the Pennsylvania Traffic Code. We simply conclude that at the very least a reasonable officer could believe that the partially obscured letter constituted a violation of the Traffic Code. As we stated in *Delfin-Colina*, so long as an officer can identify a statute that he believed to be violated and provide specific facts that "support an objective determination of whether any officer could have possessed reasonable suspicion of the alleged infraction," *Delfin-Colina*, 464 F.3d at 399, a subsequent stop is justified. Therefore, the obstruction of the first letter of the white Cadillac's license plate presented reasonable suspicion such that the subsequent traffic stop was legal.

B.

Alternatively, the Government presented evidence at the suppression hearing that the EAGLE Task Force officers had reasonable, articulable suspicion that drug activity was afoot. In support of this proposition, the Government set forth a number of facts to indicate drug activity: (1) the activities took place in an area of known criminal activity; (2) the events took place at ten o'clock in the evening; (3) Havelka exhibited nervous

---

A    Yes."
(App. 139.)
        "Q    Trooper, there are other traffic violations discussed, but was the
              license plate obscured by snow?
        A    Yes, sir."
(App. 161.)

behavior; and (4) Fleetwood behaved in a way that conformed to Wagner's knowledge of criminal activity.

When examining whether an officer had reasonable suspicion that illegal activity was afoot, we consider only those facts known to the officer before the vehicle stop. *Untied States v. Goodrich*, 450 F.3d 552, 558 (3d Cir. 2006). Therefore, any discussion in the District Court's opinion regarding Fleetwood's presentation of false identification, his possession of cocaine, and his possession of large quantities of money must be disregarded. However, even without these facts, the Task Force officers had "a particularized and objective basis for suspecting [Fleetwood] of criminal activity." *Brown*, 448 F.3d at 246.

The area where the white Cadillac was located was a known area of criminal activity. The car traveled from 448 East 14th Street, an apartment building reportedly housing a group of drug dealers from Cleveland, to 2125 June Street, a single-family residence that had been the site of a controlled drug purchase. While both the drug buy and the information regarding the Cleveland drug dealers had come six weeks earlier, officers could still consider the information when determining whether there was reasonable suspicion. *See United States v. Yusuf*, 461 F.3d 374, 391-92 (3d Cir. 2006) (evidence from two-year old search could serve as corroborating evidence); *United States v. Ritter*, 416 F.3d 256, 263-64 (3d Cir. 2005) (eight-month old drug bust could serve as evidence to corroborate informant's tip); *United States v. Gonzales*, 190 F.3d 668, 673 (5th Cir. 1999) (two-month old tip that car was smuggling illegal contraband across the

11

US/Mexican border could be considered when determining whether reasonable suspicion existed). In addition, the fact that the activity in question took place at night adds support to a determination of reasonable suspicion. *Goodrich*, 450 F.3d at 561 ("The lateness of the hour of the stop further supports the inference of criminal activity, especially when considered alongside the area's reputation for criminal activity.").

However, these two factors standing alone are insufficient, as an officer must not only have particularized suspicion that some criminal activity is afoot, but must have particularized suspicion that the particular person or vehicle at issue is involved. *Id.* at 560. As evidence that the officers had reasonable suspicion that the Cadillac or one of its occupants was involved in illegal activity, the Government points to the Cadillac's behavior and Fleetwood's behavior. Wagner testified that he believed the Cadillac had spotted the tail and was acting nervously when traveling between East 14th and June Streets. We have previously relied on this kind of nervous behavior when finding reasonable suspicion of criminal activity. *See*, *e.g.*, *United States v. Bonner*, 363 F.3d 213, 217 (3d Cir. 2004) (considering suspect's flight). In addition, Fleetwood was driven from one known location of drug activity to another, where he entered the residence, stayed only briefly and exited. At the suppression hearing, Wagner testified that this is common behavior for a person who is purchasing narcotics. Recognizing the need to allow officers to rely on their extensive experience, *Goodrich*, 450 F.3d at 560, this information supports a finding of reasonable suspicion.

12

Therefore, construing the record in the light most favorable to the Government, *Acosta*, 965 F.2d at 1255, and giving due deference to the District Court's finding that Wagner was a credible witness, we find that there was reasonable and articulable suspicion that drug activity was afoot.

As we find that there was reasonable suspicion to stop the Cadillac for the license plate violation and because the officers had reasonable suspicion that drug activity was afoot, the evidence discovered because of the stop was properly admitted. Therefore, and for the reasons set forth above, we will affirm the decision of the District Court.