**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-1582
_____

UNITED STATES OF AMERICA

v.

JONATHAN GOERIG,
                    Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2:20-cr-00137-001)
District Judge: Honorable John R. Padova
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on March 15, 2024

Before: BIBAS, MONTGOMERY-REEVES, and ROTH,
*Circuit Judges*

(Filed: August 6, 2024)

Keith M. Donoghue
FEDERAL COMMUNITY DEFENDER OFFICE
EASTERN DISTRICT OF PENNSYLVANIA
601 Walnut Street
The Curtis Center, Suite 540 West
Philadelphia, PA 19106
    *Counsel for Appellant*

Michelle Rotella
U.S. ATTORNEY'S OFFICE
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106
    *Counsel for Appellee*

————————————

OPINION OF THE COURT
————————————

BIBAS, *Circuit Judge*.

A person is not seized when he voluntarily answers questions. Jonathan Goerig was parked in a high-school parking lot. Acting on a tip, a police officer approached him, started questioning him, and saw that his shorts were pulled down. When he gave suspicious answers, the officer ordered him to get out of his truck. Evidence found in the truck revealed that Goerig planned to meet up with a minor for sex. Because those searches and seizures were constitutional, the District Court properly denied his motion to suppress.

## I. GOERIG LOITERS AT A HIGH SCHOOL

One Friday morning, police in Ridley Township, Pennsylvania, got a 911 call. The caller had seen a man in a black pickup truck with Connecticut plates parked in the high-school parking lot. The man, who appeared roughly thirty years old, "look[ed] out of place" and "[s]eemed very nervous." JA 189.

A few minutes later, Corporal Leo Doyle, who specializes in investigating crimes against children, checked out the tip. He saw the pickup truck, pulled up next to it, got out, and walked over to it. Goerig was in the driver's seat with the window rolled down. As Doyle approached, he saw Goerig lean over the console as if he were hiding something, then straighten up. Doyle asked why he was there; Goerig replied that he was meeting a friend. Doyle then asked for his driver's license. When Goerig turned to get it, Doyle could see that his shorts were down, exposing his buttock. He also saw a towel spread out over the truck's back seat. As Doyle kept questioning him, Goerig started sweating and grew increasingly nervous and annoyed. Soon, a second officer arrived, parking nearby but not boxing the truck in.

Doyle asked Goerig to step out of the truck. When he did, Doyle noticed a "penis pump" sticking out of a gym bag on the driver's seat. JA 7. He saw condensation in the pump, suggesting that it had been used recently. But Goerig denied that it was his. Next, Doyle briefly searched the truck. Though he found Goerig's cellphone and two tiny bottles of whiskey, he left them alone.

When Doyle again asked Goerig why he was in the parking lot, he repeated that he was meeting a friend. But this time, he

3

also said she was eighteen, gave her name, and claimed that she was not a student at the school. Then Doyle called his supervisor, who told him that there was an open criminal case against Goerig for sexting a fifteen-year-old girl with the same first name. (Though police had probable cause to arrest him for that crime, they had instead referred the case to the FBI.)

Doyle arrested Goerig and put him in the back of his patrol car. Doyle asked him if he wanted his keys, phone, and wallet. When he said yes, Doyle got them from the truck before driving him down to the police station.

Police towed the truck, impounded and inventoried it, then got a warrant to search it. They also got a search warrant for Goerig's phone and iCloud account; those searches revealed sexually explicit photos and videos of Goerig and the girl, including ones of Goerig using the pump.

Goerig was charged with possessing, receiving, and making child pornography as well as traveling in interstate commerce with the intent to have sexual contact with a minor. He moved to suppress the evidence from the truck, his statements to the arresting officers, and all evidence recovered from his phone and iCloud account.

After a hearing, the District Court denied the motion. It held that Doyle had not seized Goerig until he told him to get out of the truck. By then, he had reasonable suspicion. It also ruled that police had validly seized all the evidence: the penis pump had been in plain view; the keys, cellphone, and wallet were seized incident to arrest; the towel, whiskey bottles, and digital evidence were seized under the search warrants; and police would inevitably have discovered it all.

Goerig pleaded guilty but reserved his right to appeal the denial of the motion to suppress. He now appeals. We review the District Court's findings of fact for clear error and how it applied the law to those facts de novo. *United States v. Wilson*, 960 F.3d 136, 144 (3d Cir. 2020).

## II. THE DISTRICT COURT CORRECTLY DENIED THE MOTION TO SUPPRESS

### A. The police seized Goerig lawfully

Goerig first argues that Doyle seized him unlawfully. The Fourth Amendment forbids "unreasonable searches and seizures." Precedent requires a warrant for a search or seizure. *Katz v. United States*, 389 U.S. 347, 356–57 (1967). But several exceptions apply.

One such exception is a *Terry* stop. *See Terry v. Ohio*, 392 U.S. 1, 30 (1968). Under *Terry* and its progeny, an officer may "conduct a brief, investigatory stop when [he] has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000). We look at the totality of the circumstances, asking if "a reasonable, trained officer standing in the officer's shoes could articulate specific reasons" to justify the seizure. *United States v. McCants*, 952 F.3d 416, 422 (3d Cir. 2020) (brackets and internal quotation marks omitted).

We gauge reasonable suspicion as of the time of the seizure. *Terry*, 392 U.S. at 21–22. To be seized, a defendant must either "submi[t] to [an officer's] assertion of authority" or be restrained by an officer "apply[ing] … physical force." *California v. Hodari D.*, 499 U.S. 621, 626 (1991) (emphasis omitted). Thus, it is not

5

a seizure if an officer just asks questions or asks to see a driver's license so long as "a reasonable person would understand that he or she is free to refuse" to answer questions or be searched. *United States v. Drayton*, 536 U.S. 194, 197 (2002); *see Florida v. Bostick*, 501 U.S. 429, 434–35 (1991).

Doyle did not seize Goerig until he ordered him to step out of the truck. Until then, Doyle was just asking him questions. He did not touch Goerig, order him around, or stop him from leaving. And a reasonable person in Goerig's shoes would have felt free to refuse to answer.

Resisting this conclusion, Goerig cites *Johnson v. Campbell*, 332 F.3d 199 (3d Cir. 2003). There, an officer had approached a man sitting in a car, ordered him to roll down his window, and told him that he "was being detained." *Id.* at 203. When the man refused to roll his window down, the officer kept ordering him to do so until he complied. *Id.*

Here, by contrast, Doyle never "convey[ed] a message that compliance with [his] requests [wa]s required." *Bostick*, 501 U.S. at 435. He never told Goerig to roll down his window nor said he was detaining him. Though Goerig answered Doyle's questions, he could have refused to do so and gone on his way. And Doyle gave no orders until he told Goerig to get out of the truck.

By then, Doyle had reasonable suspicion for a *Terry* stop. He was an experienced investigator of crimes against children, responding to a 911 call about a nervous man with out-of-state plates parked at a high school. When he approached, he saw that Goerig was nervous and seemed to be hiding something. He could also see Goerig's exposed buttock and a towel across

6

the back seat. Taken together, these facts cleared the "low threshold of reasonable suspicion" by suggesting that Goerig was there for illicit reasons. *United States v. Graves*, 877 F.3d 494, 499 (3d Cir. 2017). Thus, Doyle could lawfully order him out of the truck.

The arrest was proper too. Once Goerig opened the truck door, Doyle saw the penis pump, which looked like it had just been used, and heard Goerig implausibly deny that it was his. He also learned that the police had evidence that Goerig had sexted a minor with the same first name as the one he claimed to be meeting. Based on all these facts, Doyle had probable cause to arrest him for attempting to have sex with a minor.

### B. The police validly searched and seized all the evidence

Next, Goerig asks us to suppress all the evidence as the fruit of illegal searches. *See Wong Sun v. United States*, 371 U.S. 471, 484 (1963). Because police seized the pump without a warrant, the government bears the burden of showing that the "seizure was reasonable." *United States v. Johnson*, 63 F.3d 242, 245 (3d Cir. 1995). It has shown that here.

Doyle properly seized the pump. When Goerig opened the door, Doyle saw in plain view a sex device that looked like it had just been used. Doyle testified that it was sticking out of a gym bag, he saw condensation in it, and he recognized it as a penis pump immediately. Given that Doyle had just caught Goerig with his pants down in a high-school parking lot, it was "immediately apparent" that the pump was incriminating. *Horton v. California*, 496 U.S. 128, 136 (1990) (internal quotation marks omitted).

7

Doyle properly checked the inside of the truck too. Once he saw the pump, he had probable cause to believe that searching the truck might reveal further evidence of a crime—attempted sexual intercourse with a minor. *See Maryland v. Dyson*, 527 U.S. 465, 467 (1999) (per curiam). When he did not find that evidence, he left everything where he found it until Goerig asked for his keys, wallet, and phone. The *Terry* stop, search for evidence, and arrest were constitutional, so they do not taint the later search incident to arrest or search warrants.

* * * * *

Though police need a reason to physically restrain someone or induce his submission, they do not need a reason to ask him questions or ask for ID. By the time Corporal Doyle asserted his authority, Goerig's demeanor, his location in a school parking lot, and his answers to questions provided reasonable suspicion. And once Doyle learned about the sexting investigation and saw the penis pump in plain view, he had probable cause to arrest Goerig and get search warrants. Because the *Terry* stop, arrest, and searches and seizures were proper, we will affirm the District Court's judgment.

8