

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-14-2008

# USA v. Headen

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-3965

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

### Recommended Citation

"USA v. Headen" (2008). *2008 Decisions.* Paper 1600.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1600

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 06-3965
_____

UNITED STATES OF AMERICA

v.

ALLEN HEADEN,

Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 06-cr-00036-1)
District Judge:  Honorable Eduardo C. Robreno
_____

Submitted Under Third Circuit LAR 34.1(a)
January 10, 2008

Before:  FISHER, HARDIMAN and STAPLETON, *Circuit Judges*.

(Filed: February 14, 2008)
_____

OPINION OF THE COURT
_____

FISHER, *Circuit Judge*.

On May 9, 2006, Defendant Allen Headen entered a conditional guilty plea to one

count of possession of a firearm by a convicted felon, in violation of 18 U.S.C.

§ 922(g)(1).  In accordance with the terms of his plea, Headen now appeals the District

Court's conviction and sentence. Headen challenges the District Court's denial of his motion to suppress the introduction of the firearm that was seized from him during a frisk on December 3, 2005. In light of the totality of the circumstances, we conclude that the police officers had reasonable suspicion to conduct the frisk. We will, therefore, affirm the judgment of the District Court.

## I.

We write exclusively for the parties, who are familiar with the factual context and legal history of this case. Therefore, we will set forth only those facts necessary to our analysis.

Prior to December 3, 2005, Special Agent Robert Wescoe, a 15-year veteran of the Bureau of Alcohol, Tobacco, Firearms and Explosives, and Detective Robert McDermott, a 10-year veteran of the Southwest Detective Division of the Philadelphia Police Department, had been investigating a year-long series of shootings and other violent crimes in Southwest and West Philadelphia. On December 2, 2005, at around 6:30 p.m., Special Agent Wescoe, in the presence of Detective McDermott, received a telephone call from a confidential informant who had previously provided reliable information to Wescoe and McDermott on shootings in the area. On this occasion, the informant told Wescoe that Headen and a fellow gang member, Dorian Thompson, were planning a retaliatory shooting against an opposing gang member who had been shooting at Headen and Headen's friends.

During the initial phone call, the informant told Wescoe that Headen and Thompson were in a blue minivan in the area, were armed, and were "looking for another guy to shoot at." Later that evening, between 7:30 p.m. and 8:30 p.m., Wescoe again spoke to the informant, who told Wescoe to check the area of 47th and Parrish Streets. Between 9:00 p.m. and 9:30 p.m., Wescoe and McDermott found the blue minivan, unattended, in the area described by the informant. After he found the van, Wescoe spoke to the informant, who told the officers to wait as Headen would be returning to the minivan.

While waiting for Headen to return to the minivan, Wescoe and McDermott noticed that the minivan had an expired registration sticker. Upon checking the registration with the Pennsylvania Bureau of Motor Vehicles, they learned that the minivan was registered to Rodney Smith and that the registration was expired. Wescoe again contacted the informant and learned that Smith was an acquaintance of Thompson.

At approximately midnight, McDermott saw Headen, with whom McDermott was familiar prior to this incident, get into the front passenger seat of the minivan and saw another male, later identified as Thompson, get into the driver's seat. Wescoe and McDermott, each in separate vehicles, followed the minivan as it drove away and each noticed that a right rear light on the minivan was not working. Philadelphia police officers, who had been summoned as a backup team, also noticed that the right rear light was not functioning and that the registration was expired.

3

After noticing these motor vehicle code violations, the officers attempted to stop the minivan. Despite Thompson's attempt to evade the officers, McDermott was able to block the minivan from leaving the area. Police removed Thompson from the van, frisked him, and found that he was wearing a ballistic vest. At the same time, Wescoe opened the passenger door and conducted a quick frisk of Headen's waist area. During that frisk, Wescoe felt a large, thick, L-shaped object in the right pocket of Headen's coat. Because of the feel of the object, along with the informant's tips, Wescoe suspected that the object was a handgun. Consequently, Wescoe ordered Headen out of the minivan and searched Headen's pockets wherein he found a fully loaded handgun, with one round in the chamber, as well as an additional magazine for the gun. The officers issued traffic violations for the expired registration and the malfunctioning tail light and arrested Headen and Thompson.

## II.

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. We review the District Court's denial of a motion to suppress for clear error as to the underlying facts, and exercise plenary review of the District Court's application of the law to those facts. *United States v. Perez*, 280 F.3d 318, 336 (3d Cir. 2002). In the Fourth Amendment context, a defendant who challenges a search or seizure typically bears the burden of proving that it was illegal. However, the government bears the burden of

4

proving that a search was reasonable where, as here, that search was conducted absent a warrant. *United States v. Johnson*, 63 F.3d 242, 245 (3d Cir. 1995).

The issue on appeal is whether the officers seized the firearm from Headen pursuant to a valid stop and frisk. Under *Terry v. Ohio*, 392 U.S. 1 (1968), and subsequent cases, "'an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has reasonable, articulable suspicion that criminal activity is afoot.'" *United States v. Valentine*, 232 F.3d 350, 353 (3d Cir. 2000) (quoting *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000)). An officer may also conduct a limited search for weapons when he reasonably believes that the subject of an investigatory stop is armed and dangerous. *Terry*, 392 U.S. at 27.

Reasonable suspicion is "'a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence.'" *Valentine*, 232 F.3d at 353 (quoting *Wardlow*, 528 U.S. at 123). In determining whether the officers had reasonable suspicion, "we must consider 'the totality of the circumstances-the whole picture.'" *United States v. Sokolow*, 490 U.S. 1, 8 (1989) (quoting *United States v. Cortez*, 449 U.S. 411, 417 (1981)). Moreover, we have recognized "that a reasonable suspicion may be the result of any combination of one or several factors: specialized knowledge and investigative inferences [*Cortez*, 449 U.S. at 419], personal observation of suspicious behavior [*Terry*, 392 U.S. at 24, and] information from sources that have proven to be reliable." *United States v. Nelson*, 284 F.3d 472, 478 (3d Cir. 2002).

5

In order for an informant's tip to be the basis for reasonable suspicion, however, that tip must be reliable both in its assertion of illegality and in its tendency to identify a determinate person. *See Florida v. J.L.*, 529 U.S. 266, 272 (2000). Nevertheless, predictive information "can reflect particularized knowledge," *Nelson*, 284 F.3d at 484, and it provides police the "means to test the informant's knowledge or credibility." *J.L.*, 529 U.S. at 271. However, the reliability of the informant must also be taken into consideration when determining whether reasonable suspicion existed. *See Valentine*, 232 F.3d at 354.

### III.

The District Court properly held that the officers had reasonable suspicion to stop the minivan with Headen and Thompson inside.[1] The District Court also correctly held that under the totality of the circumstances, the officers had reasonable suspicion to frisk Headen. Because of their participation in the Violent Crime Impact team in the neighborhood in which the stop occurred, Wescoe and McDermott both had specialized knowledge of the geographic area, the criminal activity in that area, and the individuals involved in that criminal activity. Despite Headen's argument that the District Court erred in finding that Headen had been involved in gang activity, Wescoe and McDermott had previously investigated shootings in the area involving Headen and Mark Lawrence

---

[1]We apply the Supreme Court's "bright line rule that any technical violation of the traffic code legitimizes a stop, even if the stop is merely a pretext for an investigation of some other crime." *See United States v. Mosley*, 454 F.3d 249, 252 (3d Cir. 2006).

6

and the families and acquaintances of each. Furthermore, the officers were aware of Headen's involvement in violent activity.

In addition to the officers' specialized knowledge, we must also take into consideration the reliability of the confidential informant's tip. While Headen argues that the informant's tips were general in nature and not corroborated, the informant, who had given the officers trustworthy information in the past, provided Wescoe with accurate and detailed information. For example, the informant specifically named Headen and Thompson and recounted that they were armed, in a blue minivan and were seeking to carry out a retaliatory shooting against Lawrence. These facts enhance the credibility of the informant. Moreover, the informant continued to provide Wescoe reliable and predictive information throughout the evening including the area in which the blue minivan was located, and later found, and the fact that Headen would be returning to the minivan. The informant also provided corroborating information about Rodney Smith, to whom the minivan was registered.

The evasive actions by the minivan's driver also added to the basis for the reasonable suspicion that justified frisking Headen. The officers' personal observations of these evasive actions, combined with their experience in that specific high crime area, along with the fact that they possessed specific information that Headen might be armed, all suggest that the frisk was warranted based on the totality of the circumstances.

Accordingly, the officers' suspicion that Headen was armed and dangerous was reasonable, and a protective frisk was justified. Consequently, the District Court properly denied Headen's motion to suppress the firearm seized from him during the search. We will therefore affirm the judgment of the District Court.