**PEOPLE OF THE VIRGIN ISLANDS, Plaintiff**
**v.**
**JAMES DOUGLAS NORTON, Defendant**

SX-09-CR-485
Superior Court of the Virgin Islands
Division of St. Croix
October 15, 2012

121

PAMELA COLON, ESQ., Law Office of Pamela Colon, St. Croix, USVI, *Attorney for Defendant.*

ZULEYMA CHAPMAN, ESQ., Assistant Attorney General, Department of Justice, USVI, *Attorney for Plaintiff.*

WILLOCKS, *Judge*

## MEMORANDUM OPINION

(October 15, 2012)

**THIS MATTER** came before the Court on the Defendant James Douglas Norton's (hereafter "Norton") Motion to Suppress, filed pursuant to Rule 12(b)(3)(C) of the Federal Rules of Criminal Procedure on grounds that a statement was taken in violation of the Fourth and Fifth

Amendment.[1] The Court *sua sponte* increased the issue to include the legality of the arrest and the remedy for an illegal misdemeanor arrest.

## FACTUAL AND PROCEDURAL BACKGROUND

On or about September 7, 2009, at approximately 12:54 a.m., Police Officer Sahmantha Simmonds (hereafter "Officer Simmonds") was contacted via central dispatch by Police Lieutenant Augustin Encarnacion (hereafter "Lieutenant Encarnacion"). According to Lieutenant Encarnacion, he and Marshal Michael Oquendo (hereafter "Marshal Oquendo") pulled over a vehicle that was swerving on the road. Marshal Oquendo and Lieutenant Encarnacion traffic stopped a white Ford Explorer driven by Norton in the vicinity of # 213-A La Grande Princesse, St. Croix. Upon Officer Simmonds' arrival, Marshal Oquendo and Lieutenant Encarnacion escorted Norton to Officer Simmonds and informed Officer Simmonds that Norton had a strong odor of alcohol coming from his breath and his person and that he was swerving over the roadway. Officer Simmonds never observed Norton driving. She stated that according to Marshal Oquendo and Lieutenant Encarnacion, the vehicle was swerving on the roadway. According to Officer Simmonds, she asked Norton if he was drinking and he stated yes, since 11:00 that morning. Officer Simmonds stated that during the interview, Norton's speech was slurred, his eyes were glossy, and his face was red, and there was a strong ordor of an alcoholic beverage on his person. Officer Simmonds then attempted to conduct the field sobriety tests which consist of the Horizontal Gaze Nystagmus Test, the Walk and Turn Test and the One Leg Stand Test. According to Officer Simmonds, Norton failed the Horizontal Gaze Test, but was unable to do the One Leg Stand Test and the Walk and Turn Test because Norton stated he had surgery to his knees. Officer Simmonds arrested Norton for driving under the influence and reckless driving. He was then advised of his rights. The Defendant filed a motion to suppress the statement made by the Defendant, and a hearing was held on May 20, 2011.[2] At the suppression hearing the Court *sua sponte* increased the issue to include the legality of the arrest and the remedy for an illegal misdemeanor arrest.

---

[1] The Federal Rules of Evidence are made applicable by Rule 7 of the Superior Court of the Virgin Islands.

[2] A subsequent hearing was held on September 16, 2011, but did not alter the facts and therefore the Court shall utilize the hearing held on May 20, 2011.

## DISCUSSION

■ It is an aphorism that under the protection of the Fourth Amendment of the United States Constitution "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and/or the persons or things to be seized." U.S. CONST. amend. IV. The right of security in person and property afforded by the Fourth Amendment may be invaded in various different ways by searches and seizures; however, "[i]t must always be remembered that what the Constitution forbids is not all searches and seizures, but *unreasonable* searches and seizures." *See Elkins v. United States*, 364 U.S. 206, 222, 80 S. Ct. 1437, 4 L. Ed. 2d 1669 (1960) (emphasis added).

■ Generally, the burden of proof is on the defendant who seeks to suppress evidence. *See United States v. Acosta*, 965 F.2d 1248, 1256 n. 9 (3d Cir. 1992) (citations omitted). Once the defendant has established a basis for his motion, *i.e.*, the search or seizure was conducted without a warrant, the burden shifts to the Government to show that the search or seizure was reasonable. *See United States v. McKneely*, 6 F.3d 1447, 1453 (10th Cir. 1993). The Government bears the burden of showing that each individual act constituting a search or seizure under the Fourth Amendment was reasonable. *See United States v. Johnson*, 63 F.3d 242, 245 (3d Cir. 1995).

■ "What is reasonable depends upon all of the circumstances surrounding the search or seizure and the nature of the search or seizure itself." *See United States v. Montoya de Hernandez*, 473 U.S. 531, 537, 105 S. Ct. 3304, 87 L. Ed. 2d 381 (1985).

### CONSTITUTIONALITY OF THE TRAFFIC STOP[3]

■ The threshold issue in this case is the constitutionality of the traffic stop. The constitutionality of the police traffic stop will depend upon whether — *at the time of the stop* — the officers reasonably believed that

---

[3] This Court has also discussed the constitutionality of a traffic stop in *People of the Virgin Islands v. Matthew, Gordon, Morton and Gordon*, No. 09-723, 724, 725, 726, slip op. (Super. Ct. filed Nov. 9, 2010).

Norton was committing a traffic offense, and whether the law authorized a stop for such an offense. *See United States v. Johnson, supra,* 63 F.3d 242, 246 (3d Cir. 1995).

■ At the suppression hearing, Officer Simmonds testified that Lieutenant Encarnacion and Marshal Oquendo observed a white Ford Explorer in the vicinity of #213-A La Grande Princesse, swerving over the roadway. It was based upon the observed traffic violation that they proceeded to stop the car. Virgin Islands traffic laws impose a clear obligation on a motorist to stay on the left half of the roadway. *See* 20 V.I.C. § 495. Further, police officers are not only imbued with the legal authority, but it is also their legal duty, to effect traffic stops to investigate and enforce motorists' compliance with traffic regulations and laws. *See* 20 V.I.C. § 491.[4]

■ The United States Supreme Court has held that stopping a car and detaining its occupants is a seizure under the Fourth Amendment. *See United States v. Hensley,* 469 U.S. 221, 226, 105 S.Ct. 675, 678, 83 L.Ed.2d 604 (1985): *see also United States v. Velasquez,* 885 F.2d 1076. 1081 (3d Cir. 1989), *cert. denied,* 494 U.S. 1017, 110 S.Ct. 1321, 108 L.Ed.2d 497 (1990). However, a stop to check a driver's license and registration is constitutional when it is based on an "articulable and reasonable suspicion that . . . either the vehicle or an occupant" has violated the law. *See Delaware v. Prouse,* 440 U.S. 648, 663, 99 S. Ct. 1391, 1401, 59 L. Ed. 2d 660 (1979); *Velasquez,* 885 F.2d at 1081; see *also* 75 PA. CONS. STAT. ANN. § 6308(b) (Supp. 1995).

■ In the evaluation of the constitutionality of a police traffic stop, most courts agree that an objective analysis of the facts and circumstances surrounding the stop is appropriate. *See, e.g., Scott v. United States,* 436 U.S. 128, 137-38, 98 S.Ct. 1717, 1723, 56 L.Ed.2d 168 (1978); *United States v. Whren,* 53 F.3d 371, 374, 311 U.S. App. D.C. 300 (D.C. Cir. 1995): *United States v. Hawkins,* 811 F.2d 210, 213 (3d Cir. 1987), *cert. denied,* 484 U.S. 833, 108 S.Ct. 110, 98 L.Ed.2d 69 (1987).

---

[4] 20 V.I.C. § 491. Police Regulations; special traffic regulations

 (a) In addition to the provisions of this chapter, operators of motor vehicles shall observe the general traffic regulations contained in the Police Regulations set out in Title 23, and such traffic and parking regulations as may from time to time be published by the Police Commissioner.

 (b) Motor vehicles shall stop or proceed immediately when so ordered by members of the police force.

■ A police encounter with a person suspected of driving under the influence usually has some indicators that the person is impaired, such as erratic driving, swerving, *et cetera*. Here, the testimony is that Marshal Oquendo and Lieutenant Encarnacion observed the Defendant swerving "over the roadway." Swerving over the roadway or swerving from left to right along the road are violations of the Motor Vehicle Code. Title 23, Section 163 of the Virgin Islands Code, states:

> All drivers and riders shall keep to their left on the road, or street, where they meet; when passing those moving in the same direction, they shall do so on the right side. At street corners, or crossings, persons riding or driving shall not pass others travelling by similar means, and in the same direction. Persons driving around corners leading to the right shall make a wide turn, entering the street or road on the left side. Accordingly, those driving around corners leading to the left shall make a short turn. At such time all shall drive slowly.

Title 20, Section 495 (a) and (g) further states:

> (a) Upon all highways or streets of sufficient width, a vehicle shall be driven upon the left half of the highway or street, except when overtaking and passing another vehicle proceeding in the same direction, or when an obstruction exists making it necessary to drive to the right of the center of the highway or street, or when driving on a one-way street. No motor vehicle shall overtake and pass another motor vehicle on a curve, at the intersection of another road, or when approaching the top of a hill. No motor vehicle shall overtake and pass another vehicle in violation of traffic control signals, road stripings, or markings. If there are no signals, road stripings, or markings, no motor vehicle shall overtake and pass another unless the road ahead is clear of other vehicles, pedestrians, or other obstructions for a distance of not less than 200 feet. The driver of a vehicle overtaking and passing another vehicle shall do so on the right side at a safe distance and shall not again drive to the left side of the roadway until safely clear of the overtaken vehicle.
>
> (g) Whenever any highway or street has been divided into two or more roadways by an intervening space or physical barrier, every vehicle shall be driven only upon the left-hand roadway, unless directed or permitted to use another roadway by official traffic-control devices

or police officers. No vehicle shall be driven over, across, or within any such dividing space or barrier, except through a crossover or intersection established by the U.S. Virgin Islands Police Department (V.I.P.D.).

Ergo, the Court finds, that there was a reasonable basis under the circumstances for Marshal Oquendo and Lieutenant Encarnacion to stop the vehicle to investigate the traffic violation. Accordingly, the police traffic stop made by Lieutenant Encarnacion and Marshal Oquendo passes constitutional muster.

## WAS THE INITIAL STOP AN ARREST OR AN INVESTIGATORY STOP

■ The burden of proving that a seizure or arrest is unlawful usually rests with the Defendant. *See United States v. Steam*, 597 F.3d 540, 551 (3d Cir. 2010). However, when the police conduct a search or seizure without a warrant, the burden shifts to the Government to prove that no exigent circumstances or other exception to the warrant exists. *See United States v. Headen*, 264 Fed. Appx. 244, 246 (3d Cir. 2008) (citing *United States v. Johnson*, 63 F.3d 242, 245 (3d Cir. 1995).

■ It is the foundation of our jurisprudence that the initial feature distinguishing an encounter from a seizure is the Defendant's freedom to leave from the officer. *See United States v. Hendricks*, 319 F.3d 993 (7th Cir. 2003), *cert. denied* 540 U.S. 856, 124 S. Ct. 149, 157 L. Ed. 2d 102 (2003). The Supreme Court in *Terry v. Ohio* stated that "[i]t must be recognized that whenever a police officer accosts an individual and restrains his freedom to walk away, he has seized that person." *See Terry v. Ohio*, 392 U.S. at 16, 88 S. Ct. at 1877.

■ It is firmly established within jurisprudence that not all encounters between citizens and police are seizures as governed by the Fourth Amendment. *See Muehler v. Mena*, 544 U.S. 93, 101, 125 S. Ct. 1465, 161 L. Ed. 2d 299 (2005). Rather, a seizure occurs when a reasonable person feels that he cannot terminate an encounter with the police. *See Brendlin v. Cal.*, 551 U.S. 249, 127 S.Ct. 2400, 2405-2406, 168 L. Ed. 2d 132 (2007). Further, while a warrantless seizure not based upon probable cause is usually invalid, an investigatory stop, which has been defined to be a brief seizure by police, is lawful if it is based upon reasonable suspicion. *See Terry v. Ohio*, 392 U.S. at 20-21.

The essential issue here is whether the initial stop by Lieutenant Encarnacion and Marshal Oquendo was of such a nature that it rose from the level of an investigatory stop to that of an arrest. As stated before, Norton's vehicle was observed swerving from side to side on the roadway which gave the peace officers reasonable suspicion. The issue then becomes whether the actions by Marshal Oquendo and Lieutenant Encarnacion were such that it went from an investigatory stop to an arrest. Marshal Oquendo and Lieutenant Encarnacion were in a marked police car and their emergency lights were on, when they pulled Norton over. They had on police and marshal uniforms. Both had guns, though they were never drawn. Norton was escorted to Officer Simmonds by Marshal Oquendo and Lieutenant Encarnacion.

Clearly, here, Norton was accosted by Marshal Oquendo and Lieutenant Encarnacion; and both of them escorted Norton to Officer Simmonds. *See* Tr. Pg. 34 Lns., 12-16. According to the testimony of Officer Simmonds, both Marshal Oquendo and Lieutenant Encarnacion were wearing uniforms and were in marked police cars with their lights flashing. *See* Tr. Pg. 42 Lns. 5-20. Contrary to the assertions of the People, this encounter is a classic textbook seizure. *See United States v. Faulkner*, 450 F.3d 466, 469-470.

However, not all seizures are arrests or unlawful. Under *Terry*, a warrantless seizure not based upon probable cause is usually invalid. But an investigatory stop, which is a brief seizure by police officers, is lawful if it is based upon reasonable suspicion. *Terry v. Ohio*, at 20-21. Under *Terry*, Courts must balance the "need to search (or seize) against the invasion which the search or (seizure) entails" to determine whether the search or seizure was unlawful. *Terry v. Ohio*, at 21. Under this umbrella, important Government interests can justify brief investigatory stops based upon less than probable cause.

In this instant case, Norton was observed swerving on the roadway, which is a clear violation of Virgin Islands law. In addition, it also gave rise to articulable suspicion that Norton may have been driving under the influence of an intoxicating liquor. It is irrefutable that the Government has an overwhelming interest in people following the laws of the Virgin Islands; that if a person is observed violating said laws, the Government has a responsibility to stop that person violating the law. The Defendant in this case was pulled over by the peace officers and stood outside of his

130

vehicle. He was not handcuffed. Once these factors are placed on the scale, the scale tilts heavily in favor of the Government.

 Assuming arguendo, that the peace officers held the Defendant for a prolonged period of time while they waited for Officer Simmonds. The Court in *Brignoni-Prince v. U.S.*[5] has held that when a police officer holds a suspect beyond the amount of time necessary to effectuate the purpose of the stop, the seizure becomes an arrest and must be supported by probable cause. Though the higher Courts have not established a "bright-line rule" as to determine when an investigatory stop becomes an arrest[6], lower courts have addressed the issue on a case-by-case basis. *See U.S. v. Fornia-Castillo*, 408 F.3d 52, 63 (1st Cir. 2005). In determining when an investigatory stop becomes an arrest, Courts must consider the diligence of the police in resolving their reasonable suspicion as quickly as possible[7], the scope and nature of the restraints placed on an individual's liberty[8], and whether the police transported the individual to another location.[9]

 Given the facts of this case: the fact that the Defendant was not in handcuffs, that the Defendant was escorted a short distance to Officer Simmonds, that Officer Simmonds arrived shortly after the traffic stop by Marshal Oquendo and Lieutenant Encarnacion, this Court cannot find that the investigatory stop gave way to an arrest.

## CONSITUTIONALITY OF THE QUESTIONING

According to Officer Simmonds, when Norton was escorted to her by Marshal Oquendo and Lieutenant Encarnacion, it was relayed to her that Norton was swerving all over the road. Further, he had a strong ordor of alcohol on his breath and person. Officer Simmonds asked Norton if he was drinking. Norton replied that he was. According to Officer Simmonds, during her interview with Norton, she observed that his speech was slurred, his eyes were watery-looking, and he staggered as he walked and stood. Officer Simmonds questioned Norton if he was

---

[5] *United States v. Brignoni-Ponce*, 422 U.S. 873, 880-881, 95 S. Ct. 2574, 45 L. Ed. 2d 607 (1975).

[6] *United States v. Sharpe*, 470 U.S. 675, 685, 105 S. Ct. 1568, 84 L. Ed. 2d 605 (1985).

[7] Id. at 687-88.

[8] *Oliveira v. Mayer*, 23 F.3d 642, 645-46 (2d Cir. 1994).

[9] Id.

drinking, and Norton replied that he was drinking since 11:00 that morning. Officer Simmonds then attempted to give him the three field sobriety tests, one of which he failed and the other he was unable to do for medical reasons. According to Officer Simmonds, he was then placed under arrest and taken to Ann Schrader Command. The Defendant was clearly suspected of driving under the influence, subjected to custodial interrogation, but was not *Mirandized*[10] until after his arrest. Officer Simmonds, when questioned, stated:

THE COURT: — did they advise you as to when you are to advise the defendant as to his rights? Was it before you questioned him in terms of whether he was driving or before he was placed under arrest?

THE WITNESS: I never questioned him if he was driving, and we do that after they failed the testing.

THE COURT: You never — in this particular case you never questioned the defendant as to whether he was driving or not?

THE WITNESS: I asked him if he — no I never asked him if he was driving. (Tr. Pg. 24, Lns. 16-24)

THE COURT: Did you advise him — prior to asking him whether he was drinking did you advise him of his rights. (Tr. Pg. 24-25, Lns. 25-2)

THE WITNESS: No, your honor.

THE COURT: At that juncture did you have information that he was the driver of the vehicle or that he was suspected of being the driver of the vehicle?

THE WITNESS: Yes your honor.

THE COURT: And that he was under investigation —

THE WITNESS: Yes, your honor.

THE COURT: — or investigation in terms of traffic violation?

THE WITNESS: Yes, your honor.

THE COURT: And you didn't advise him of his rights?

THE WITNESS: At that time, no, your honor.

THE COURT: When did you advise him of his rights?

THE WITNESS: After he was placed under arrest. (Tr. P. 25, Lns. 3-21).

---

[10] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

■ It is irrefuted that Norton was suspected of driving under the influence, he was detained and subjected to custodial interrogation, thus triggering his rights under *Miranda*.[11] However, he was not advised of his rights until after his arrest and he was taken to Ann Schrader Command. Clearly a violation of the Defendant's Fifth Amendment Rights.

■ A person who gives a statement to law enforcement officers which is the product of a custodial interrogation must be advised of their rights against self-incrimination. Custodial interrogation according to *Miranda*, is the questioning initiated by law enforcement officers after a person has been taken into custody or his/her freedom has been deprived in any significant way.

■ The case law is clear, failure to *Mirandize* a suspect results in the suppression of any statements made by the Defendant as "fruits of the poisonous tree." *See Wong Sun v. United States*, 371 U.S. 471, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963). However, this case offers an interesting dilemma for what is the fruits of the poisonous tree and further what impact did the admission play in the arrest. Clearly, Norton's admission to having been drinking must and will be suppressed. The Court must now determine if there are any other fruits the poisonous tree bears.

## LEGALITY OF THE ARREST BY OFFICER SIMMONDS

Having found that the traffic stop passes constitutional muster, the Court shall now examine the constitutionality of the arrest. The facts of this case require a two-prong analysis. First, can an officer arrest a person for a misdemeanor when not committed in his or her presence and second if the arrest is unlawful what are the remedies?

Police Officer Simmonds testified that she never saw Norton driving. (*See* Tr. Pg. 32 Lns. 11-21). When questioned by the Court, Officer Simmonds stated that there was no reason Marshal Oquendo or Lieutenant Encarnacion could not make the arrest. (*See* Tr. Pg. 43. Lns. 5-13).

The People argue that many courts have adopted the "police team" concept to meet the presence requirement. However, the People have failed to articulate whether this viewpoint has been adopted by the Third Circuit or whether any court in the Virgin Islands has adopted this view.

---

[11] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

In fact, the literature of the Third Circuit and Virgin Islands case and statutory law are devoid of any such adoption. Quite the contrary. Virgin Islands Code, Title 5, Section 3562 in particular, requires a misdemeanor to be committed or attempted to be committed in the presence of the peace officer before he/she can arrest for a misdemeanor. Title 5, Section 3562 of the Virgin Islands Code states

> A peace officer may make an arrest in obedience to a warrant delivered to him, or may, without a warrant, arrest a person
>
> (1) for a public offense committed or attempted in his presence;
>
> (2) when a person has committed a felony, although not in his presence;
>
> (3) when a felony has in fact been committed and he has reasonable cause for believing the person to have committed it;
>
> (4) on a charge made, upon a reasonable cause, of the commission of a felony by the party: or
>
> (5) at night, when there is reasonable cause to believe that he has committed a felony.

In *Virgin Islands v. Carrero*, the court also held that dealing with arrests by peace officers, the arrest of a person without a warrant for a misdemeanor not committed in the presence of the arresting officer was illegal. *See* 3 V.I. 177, 139 F. Supp. 275, 1955 U.S. Dist. LEXIS 2200 (D.C.V.I. 1955). The Court in *Government of the Virgin Islands v. Rijos*, 285 F. Supp. 126, 6 V.I. 475, 1968 U.S. Dist. LEXIS 9171 (D.C.V.I. 1968) also rejected this notion of "police team." In that case, it further clarified that the misdemeanor must be committed in the presence of the arresting officer.

█ Clearly, the statute does not authorize a peace officer to effectuate an arrest for a misdemeanor not committed in his or her presence. *See Virgin Islands v. Carrero*, 3 V.I. 177, 139 F. Supp. 275 (1955); *Government of V.I. v. Duvergee*, 8 V.I. 496, 456 F.2d 1271, 1972 U.S. App. LEXIS 10909 (3d Cir. 1972); *Government of V.I. v. Gereau*, 10 V.I. 53, 1973 U.S. Dist. LEXIS 5201 (D.C.V.I. 1973).

Additionally, a review of Title 5, Section 3562, shows that the statute is devoid of any exception for traffic violations. Nor is there to be found

anywhere in the Virgin Islands Code any exceptions for a misdemeanor arrest of a person outside the presence of an officer for traffic offenses.[12]

The People argue the case of *U.S. v. LaVille*, 480 F.3d 187, 48 V.I. 1012 (2007) however, that case is inapplicable here. The *LaVille* case though factually similar, addressed the issue as to whether the unlawfulness of an arrest under state or local law made the arrest unreasonable per se under the Fourth Amendment. The matter before this Court is whether a misdemeanor arrest outside the presence of an officer is an unlawful arrest in violation of Virgin Islands law.

 Further it is insufficient that the officer believe that the person he/she arrested committed the misdemeanor offense; the offense must be committed in the officer's presence. See *Government of the Virgin Islands in the Interest of Joseph Phillips, Minor*, 9 V.I. 83, 1972 V.I. LEXIS 5 (Mun. Ct. St. T. and St. J. 1972).

 *Ergo*, an in depth analysis on this issue is unwarranted. Driving under the influence according Title 20, Section 493 is a misdemeanor. The misdemeanor was not committed in the presence of Officer Simmonds. Consequently, Officer Simmonds could not arrest the Defendant. Hence, the arrest was illegal.

## REMEDIES FOR AN ILLEGAL ARREST FOR A MISDEMEANOR CRIME

The Achilles Heel of this matter is that the illegal arrest of a defendant does not bar prosecution for the crime charged, where the Court acquired jurisdiction by virtue of a duly filed information. See *Virgin Islands v. Carrero*, 3 V.I. 177, 139 F. Supp. 275, 1955 U.S. Dist. LEXIS 2200 (D.C.V.I. 1955); *see also United States v. De Leon*, 13 V.I. 11, 412 F. Supp. 89, 1976 U.S. Dist. LEXIS 15857 (D.C.V.I. 1976).

---

[12] Even under Title 5 Section 3571, it still requires the misdemeanor be committed or attempted to be committed in the presence of a police officer:

> (a) Peace officers designated in title 5 Virgin Islands Code section 3561 may issue appearance tickets for misdemeanor offenses committed or attempted in their presence.
> (b) Peace officers authorized pursuant to title 5 Virgin Islands Code section 3562 to arrest a person without a warrant for a misdemeanor offense may issue to and promptly serve upon the person an appearance ticket.

The appropriate remedy in this matter, besides a civil remedy, is to suppress any and all "fruits of the poisonous tree."[13] Of importance is whether the field sobriety tests are fruits of this poisonous tree.

The field sobriety test[14] in this matter consisted of the Horizontal Gaze Nystagmus Test,[15] the Walk and Turn Test,[16] and the One Leg Stand.[17] However, as stated before, only the Horizontal Gaze Nystagmus Test was administered by Officer Simmonds prior to the arrest of Norton and was a factor used in the arrest of the Defendant.

The field sobriety tests have been used historically as evidence of intoxication or impairment and is usually followed by a more conclusive chemical lest. See 60 ALR 4th 1103, 1132 (1988), *Stare v. Superior Court,*

---

[13] *Government of the Virgin Islands v. Prescott,* 18 V.I. 152, 1982 V.I. LEXIS 142 (Terr. Ct. St. C. 1982).

[14] There are other test, that have been used, such as the Finger to Nose, The Rhomberg Test, Finger Tapping Hand Clapping, Counting Backwards, Reciting the Alphabet, however, only the three mentioned are germane to this case.

[15] The Horizontal Gaze Nystagmus (HGN) is the involuntary jerking of the eye which occurs naturally when the eyes gaze to the side. Under normal conditions, nystagmus occurs when the eyes are rotated at high peripheral angles. However, when a person is impaired by alcohol nystagmus may occur at a lesser angle. A person under the influence or impaired by alcohol will usually have difficulty smoothly tracking a moving object. With the HGN Test, the officer observes the eyes of the person as the person follows a slowly moving object such as a pen or small flashlight horizontally. The officer observes the person to determine if each eye can follow a moving object smoothly, if jerking is distinct when the eye is at maximum deviation, and if the angle of onset of jerking is within 45 degrees of center. If after observing both eyes, a person fails four or more, that person is considered impaired.

[16] The Walk and Turn Test is considered a "divided attention test." It requires a person to listen and follow instructions while performing simple physical movements. If a person is impaired by alcohol that person will have difficulties with tasks that require their attention to be divided between simple mental and physical exercises. In the Walk and Turn Test, the person is instructed to take nine steps, heel to toe, along a straight line. The person must then turn on one foot and return in the same manner in the opposite direction. The law enforcement officer observes a person to see if the person cannot keep his/her balance while listening to the instructions, begins before the instructions are finished, stops while walking to regain his/her balance, does not touch heel to toe, steps off the line, uses his/her arms to keep his/her balance, makes an improper turn or takes an incorrect number of steps. A person who exhibits two or more of these indicators is said to be impaired.

[17] Like the Walk and Turn Test, the One Leg Stand is also considered a "divided attention test." The person is instructed to stand with one foot approximately six inches off the ground and told to count aloud by the thousands (one thousand one, one thousand two, etc.) until told to put his/her foot down. The test lasts for thirty seconds. The officer looks for swaying while balancing, using his arms to balance, hopping to maintain balance, and putting the foot down. A person who exhibits two or more of these indicators is said to be impaired.

149 Ariz. 269, 718 P.2d 171, 178-81 (1986). Thus, field sobriety tests help to establish the probable cause for the arrest and, therefore, cannot be viewed as fruits of the poisonous tree. Following a field sobriety test, a blood or breath test can then be legally given to establish that the driver was over the legal limit. Thus, field sobriety tests cannot be viewed as fruits of the poisonous tree.

## CONCLUSION

In conclusion, this Court holds that the initial stop made by Lieutenant Encarnacion and Marshal Oquendo was investigatory and did not give rise to an arrest. The Court further finds that the Defendant was questioned in violation of his rights and therefore will suppress any and all statements made prior to him being advised of his rights, and finally that the Defendant was arrested illegally, however, it is not a bar to prosecution of this matter. A separate order consistent with this Memorandum and Opinion shall be issued.