## SUPERIOR COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

| | |
|---|---|
| PEOPLE OF THE VIRGIN ISLANDS,<br><br>                  **PLAINTIFF,**<br><br>     **V.**<br><br>WAYNE GRAHAM,<br><br>                  **DEFENDANT.** | **SX-18-CR-130**<br><br>**CHARGE(s):**<br>**POSSESSION OF A CONTROLLED SUBSTANCE WITH INTENT TO DISTRIBUTE**<br>19 V.I.C. §604(a)(1)&(b)(1)(A)<br>**POSSESSION OF DRUG PARAPHERNALIA**<br>19 V.I.C. §630(b)& 593(15)(I)&(J)&(L)<br><br>**2020 VI SUPER 023 U** |

**Appearances:**

**Amelia B. Joseph, Esq.**
Territorial Public Defender
*For Wayne Graham*

**Eric Chancellor, Esq.**
Assistant Attorney General
Department of Justice
*For the People*

## MEMORANDUM OPINION

**WILLOCKS, Presiding Judge**

¶1    **THIS MATTER** is before the Court on the Defendant's Motion to Suppress (hereinafter "Motion") filed on January 24, 2019. The People filed a Motion in Opposition (hereinafter "Opposition") on March 19, 2019.

## BACKGROUND

¶2    On May 12, 2018, at approximately 8:00 p.m. the Defendant was near the Pan Am Pavilion area in Christiansted town waiting for a reggae band to perform. (Mot. at 1.) As the Defendant was waiting he started to feel sick, so he decided to sit down on a slab of concrete, where he began to hold his stomach. (*Id.*) Officer Felicien, who has narcotics training as well as patrolled high-crime areas due to being a member of the special operations bureau was on duty patrolling the Pan Am Pavilion

areas. (Tr. at 13-14.) The officer observed the Defendant sitting, with his head facing downwards, his hands in his laps, and fiddling his fingers. (*Id.* at 15.) According, to the officer's testimony the Defendant's behavior was suspicious given that the location is a high-crime area where drugs are commonly sold. (*Id.* at 16.) As a result, the officer began to walk in the direction of the Defendant. (*Id.* at 17.) When the Defendant noticed the officer walking towards him, he quickly discarded an unknown item. (*Id.* at 18.) As the officer got closer, he noticed that the Defendant appeared nervous and was leaning forward with his forearms on his thighs as if he was concealing something with his pelvic. (*Id.* at 19; *see also* Probably Cause Fact Sheet dated May 14, 2018.) Once Officer Felicien approached the Defendant and asked, "if he was okay" at which the Defendant replied "yes". (Tr. at 19.) Officer Felicien stated that he then asked the Defendant to sit up to ensure that the Defendant was in fact okay. (*Id.*) The Defendant hesitated and only slightly sat up after the second request. (*Id.*) As a result, the Officer asked the Defendant a third time to sit all the way up, to which he then complied. (*Id.*) Once the Defendant sat up the officer noticed a clear plastic baggie on his lap. (*Id.*) Officer Felicien stated that because the baggie was similar to the kind commonly used to distribute drugs he asked the Defendant to stand up and informed him that he was going to pat him down. (*Id.* at 20.) As Officer Felicien began to pat the Defendant's left front pants pocket he felt what he believed to be several plastic artistic vials. (*Id.* at 21.) Officer Felicien asked the Defendant "[w]hat's in your pocket" and the Defendant replied, "I ain't gon lie to you, I selling (sic)." (*Id.*) Officer Felicien then continued to pat-down the Defendant when he felt a soft round item in his right pants pocket. (*Id.* at 22.) The Defendant then began to get fidgety and stated: " [i]t's just weed". (*Id.* at 23.) The officer then patted down the Defendant's back pockets where he discovered a brown paper bag that contained more vials with a leafy green substance and a blade wrapped in a napkin. (*Id.*) The Defendant was also wearing a backpack, which the officer also patted and then asked the Defendant to remove after feeling what he

believed to be several artistic vials. (*Id.*) Once the Defendant removed the backpack the officer looked

inside of it and discovered that it did contain artistic vails with a green leafy substance. (*Id.*)

## STANDARD OF REVIEW

¶3      The Fourth Amendment is applicable in the Virgin Islands pursuant to Section 3 of the Revised

Organic Act of 1954, as amended, it guarantees the right of the people to be free from unreasonable

searches and seizures.[1] Generally, for a search or seizure to be reasonable under the Fourth

Amendment, it must be effectuated with a warrant based on probable cause,[2] unless it is justified by

"a specifically established and well-delineated exception to the warrant requirement."[3]

¶4      The burden of proof is on the defendant who seeks to suppress the evidence.[4] However once

the defendant establishes a basis for his motion by showing that the search or seizure was conducted

without a warrant, the burden shifts to the government to show that each individual act constituting a

search or seizure under the Fourth Amendment was reasonable.[5]

¶5      The Fourth Amendment analysis typically proceeds in three stages. First, the Court determines

whether a Fourth Amendment event, such as a search or a seizure, has occurred.[6] Then, the Court must

consider whether the search or seizure was reasonable.[7] If the search or seizure was unreasonable, the

Court must determine whether the circumstances warrant suppression of the evidence.[8]

---

[1] *Blyden v. People of the Virgin Islands*, 53 V.I. 637, 647 n.5 (V.I. 2010) (internal quotations marks omitted) (The Fourth Amendment is applicable in the Virgin Islands pursuant to section 3 of the Revised Organic Act of 1954, as amended, 48 U.S.C. § 1561.).

[2] *See United States v. Lewis*, 672 F.3d 232, 237 (3d Cir. 2012).

[3] *See Coolidge v. N.H.*, 403 U.S. 443, 454-55 (1971).

[4] *See United States v. Murray*, 53 V.I. 831, 842, [WL] at *3 (D.V.I. 2010) (quoting *Rakas v. Illinois*, 439 U.S. 128, 132, 99 S. Ct. 421, 58 L. Ed. 2d 387(1978)).

[5] *See United States v. Johnson*, 63 F.3d 242, 245 (3d Cir. 1995).

[6] *See United States v. Smith*, 575 F.3d 308, 312-13 (3d Cir. 2009).

[7] *Id.*

[8] *See People of the V.I. v. Schulterbrandt*, 2016 V.I. LEXIS 121, *6 (V.I. Super. Ct. Aug. 22, 2016) (citing *United States v Dupree*, 617 F.3d 724, 730 (3d Cir. 2010)) (citations and quotation marks omitted).

## DISCUSSION

¶6     The Defendant argues that Officer Felicien stop and search was unconstitutional because the officer lacked reasonable suspicion or probable cause. (Memo. of Law 3.) Therefore, "the alleged cocaine, marijuana, and drug paraphernalia" that was obtained as a result of the illegal stop and search must be suppressed. (*Id.*)

¶7     In contrast, the People of the Virgin Islands (hereinafter "People"), contend that due to Officer Felicien training he believed that the item the Defendant discarded was drugs packaged for sale. (Opp'n. at 2.) Therefore, "for his safety and because he had reasonable grounds to believe that illegal activity was being conducted the officer patted down the Defendant." (*Id.*) "During the pat-down, the officer felt several plastic artistic vials in the Defendant's pocket", which gave him probable cause to believe that criminal activity was afoot. (*Id.*)

### A. Investigatory Stop

¶8     An investigatory stop—brief seizures by police officers that fall short of traditional arrests—is a well-established exception to the Fourth Amendment warrant requirement.[9] Under the Fourth Amendment, an officer can "conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot."[10] The officer may stop a suspect on the street and conduct a limited search, i.e. a frisk, of the suspect without probable cause:

> where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety.[11]

---

[9] *Terry v. Ohio*, 392 U.S. 1, 21, 28-31 (1968) (a police officer may stop a suspect on the street and conduct a limited search, i.e. a frisk, of the suspect without probable cause).

[10] *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)).

[11] *Blyden*, 53 V.I. 395 at 648.

¶9　　An officer has reasonable suspicion to conduct an investigatory stop when he can point to "specific and articulable facts which, taken together with rational inference from those facts, reasonably warrant intrusion."[12] The officer must "articulate something more than an inchoate and unparticularized suspicion or a hunch."[13] However, because calculating whether an officer has reasonable suspicion is an imprecise judgment the courts give considerable deference to police officer's determination of reasonable suspicion.[14] Therefore in determining whether there was reasonable suspicion courts "must consider the totality of the circumstances, in light of the officer's experience."[15] This includes the officer's specialized knowledge, investigative inferences, personal observation of suspicious behavior, and information received from a reliable source."[16]

¶10　　The Court must now determine whether a violation under the Fourth Amendment occurred. According to the Defendant he was seized within the meaning of the Fourth Amendment when Officer Felicien ordered him to take off his backpack and searched it in the presence of two other officers without his consent. (Mot. at 2.) However, in this jurisdiction, it has firmly been established that a seizure under the Fourth Amendment occurs when a reasonable person would not feel free to leave or terminate an encounter with the police.[17] The Supreme Court has also held that a seizure under the Fourth Amendment requires a show of authority by the police and submission to such authority by the seized.[18] Whether the seized conduct constitutes submission depends on the totality of the circumstance.[19]

---

[12] *Terry*, 392 U.S. 1 at 21.

[13] *Id.* at 27.

[14] *People of the Virgin Islands v. Prentice*, 64 V.I. 79, 92 (V.I. Super. Ct. 2016), *quoting Terry v. Ohio*, 392 U.S. 1, 88 (1989) (*citing United States v. Robertson*, 305 F.3d 164, 168 (3d. Cir. 2002)), *see also United States v. Mosley*, 454 F.3d 249, 252 (3d. Cir. 2006).

[15] *United States v. Givan*, 320 F.3d 452, 458 (3d Cir. 2003).

[16] *Blyden v. People of the Virgin Islands*, 53 V.I. 637, 649 (2010) (*citing United States v. Nelson*, 284 F.3d 472, 478 (3d. Cir. 2002)).

[17] *People of the Virgin Islands v. Norton*, 59 V.I. 121, 129 (V.I. Super. Ct. Oct. 15, 2012).

[18] *People of the Virgin Islands v. Prentice*, 64 V.I. 79, 91-92 (V.I. Super. Ct. Feb. 23, 2016) (citing *California v. Hodari D.*, 499 U.S. 621, 626 (1991).

[19] *People of the Virgin Islands v. Prentice*, 64 V.I. 79, 92 (V.I. Super. Ct. Feb. 23, 2016).

¶11    Here, the investigatory stop originated when Officer Felicien approached the Defendant to inquiry if he was okay because he was bent over with his hands on his pelvic area. (Tr. at 19.) When questioned by the officer the Defendant stated that he was okay but continued to sit bent over with his hands covering his pelvic area. (*Id.*) At the hearing, the officer testified that he initially approached the Defendant after seeing him sitting with his hands in his lap and fiddling his fingers. (*Id.* at 15.) According to the officer, this behavior was suspicious to him because individuals are known to roll marijuana cigarettes in that area. (*Id.* at 16.) As a result, the officer started walking towards the Defendant and that's when he appeared to quickly discard something. (*Id.* at 18.) Once the officer approached the Defendant he stated that he asked him to sit up, to which the Defendant did not respond. (*Id.* at 19.) As a result, the officer asked the Defendant to sit up again. (*Id.*) However, it was not until the officer asked a third time that the Defendant sat up. (*Id.*) The Court finds that at this point a seizure under the Fourth Amendment had occurred. As the officer's persistent instruction for the Defendant to sit up after he failed to comply the first two request was a sufficient show of authority to constitute a seizure under the Fourth Amendment. Given, that a reasonable person would not feel free to terminate the encounter. In addition, the Defendant's compliance after the officer's third request was a sufficient show of submission, as the Defendant yielded to the officer's authority. Therefore, the Defendant was seized, triggering the Fourth Amendment.

¶12    Having determined that a seizure did occur under the Fourth Amendment the Court must now ascertain whether the officer had reasonable suspicion that the Defendant was engaged in criminal activity. At the hearing Officer Felicien testified that when he noticed the Defendant he appeared to be fiddling with something in his hands. Given that the Defendant was in a high crime area, where drugs are commonly used he became suspicious and walked over towards him. The officer stated that as he got closer, the Defendant appeared nervous and as if he was concealing something in his pelvic area. So, he asked the Defendant to sit up and when he finally complied, that's when the officer noticed that

he was concealing a clear plastic baggie. Based on the totality of the circumstances surrounding the stop, the Court finds that the officer did have reasonable suspicion for the seizure as he could point to specific and articulable facts that lead him to believe that criminal activity was afoot.

¶13    While the individual facts alone do not suggest that the Defendant was engaged in criminal activity when taken together with the officer's training they do give rise to a legitimate inference of criminal activity. Moreover, the United States Supreme Court held in *Illinois v. Wardlow*, that although an individual's presence in a high crime area by itself is not enough to support a reasonable inference that criminal activity is afoot it is a relevant contextual consideration.[20] This Court has also stated that a Defendant's nervous behavior in addition to other factors does give an officer's reasonable suspicion.[21] And that a suspect's conduct after failing to comply with an officer's show of authority can also amount to reasonable suspicion that criminal activity is afoot.[22] Thus, the Defendant's presence in a known drug area while appearing to be nervous and failing to comply with the officer's first two requests was suspicious enough for the officer to reasonably believe that the Defendant was engaged in criminal activity. In addition, the officer's belief that the Defendant quickly discarded something and the fact that he was concealing a clear plastic baggie, commonly used to distribute marijuana, also gave the officer reasonable suspicion that criminal activity was occurring. Accordingly, the Court finds that the totality of the circumstance supports a finding that Officer Felicien did have reasonable suspicion to conduct the investigatory stop.

¶14    Haven satisfied the first two steps of the Fourth Amendment analysis the Court must now determine whether the evidence obtained during the pat-down of the Defendant should be suppressed. Under the Fourth Amendment, warrantless searches are constitutionally invalid unless a well-

---

[20] *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000).

[21] *People of the Virgin Islands v. Rojas*, 2018 V.I. LEXIS 93, at *11 (V.I. Super. Ct. 2018).

[22] *People v. Samuel*, 46 V.I. 177,186 (V.I. Super. Ct. 2005),*United States v. Johnson*, 212 f.3D 1313, (D.C. Cir. 2000); *United States v. Smith*, 217 F.3d 746 (9th Cir. 2000); *United States v. Santamaria-Hernandez*, 968 F. 2d 980 (9th Cir. 1992).

established exception to the warrant requirement applies. Two exceptions to the Fourth Amendment

warrant requirement are the "*Terry* stop" and the "plain feel" doctrine. In *Terry* the Supreme Court

held that:

> where a police officer reasonably believes that criminal activity may be afoot and that
> the person with whom he is dealing with may be armed and dangerous. . . he is entitled
> for the protection of himself and others to conduct a carefully limited search of the outer
> clothing of such persons in an attempt to discover weapons which might be used to
> assault him."[23]

Furthermore,

> [w]hen an officer is justified in believing that the individual whose suspicious behavior
> he is investigating at close range is armed and presents a danger to the officer or to
> others . . . it would . . . be clearly unreasonable to deny the officer the power to take
> necessary measures to determine whether the person is in fact carrying a weapon and
> to neutralize the threat of physical harm.[24]

¶15    Under the plain feel doctrine, "if an officer lawfully pats down a suspect's outer

clothing and the officer's sense of touch makes it immediately apparent that the felt object is

contraband, the contraband detected may be seized.[25] A lawful pat-down under *Terry* is limited

to what is necessary to discover weapons, therefore an officer is allowed "to slide and

manipulate an object in the suspect's pocket until he is reasonably able to eliminate the

possibility that the object is a weapon.[26] "If the officer develops probable cause to believe that

the object is contraband prior to eliminating the possibility that it is a weapon, he may lawfully

perform a more intrusive search.[27] If contraband is discovered, the officer may seize it and it

will be admissible.[28]

---

[23] *Gumbs v. People of the Virgin Islands*, 64 V.I. 491, 508 (V.I. 2016) *quoting Terry v. Ohio*, 392 U.S. 1, 30 (2016).

[24] *Terry v. Ohio*, 392 U.S. 1, 24 (2016).

[25] *People pf the Virgin Islands v. Butler*, 2014 V.I. LEXIS 83, 22 (V.I. Super. Ct. Oct. 3, 2014) *quoting Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993).

[26] *People of the Virgin Islands*, 2014 V.I. LEXIS at 22; *citing United States v. Yamba*, 506 F.3d 251, 259 (3d Cir. 2007).

[27] *Id.*

[28] *Id.*

¶16    In the present matter, the officer testified that after he saw the clear plastic baggy in the Defendant's lap, he asked the Defendants to stand up and began to pat him down. (Tr. 20.) According to the officer's, he began to pat the Defendant's front left pocket that's when he felt a bunch of artistic vials. (*Id.* at 21.) So, he asked the Defendant what was in his pocket. (*Id.*) And the Defendant responded, "Officer, I ain't gon lie to you, I selling [sic]." (*Id.*) In response, the officer informed the Defendant that he was going to continue the pat-down, but the Defendant became fidgety and stated: "let me go it's just weed." (*Id.* at 22.) Nevertheless, the officer continued the pat-down and subsequently removed additional contraband from the Defendant. (*Id.*)

¶17    At the hearing, the officer testified that he patted the Defendant down to see if he had any weapons for his safety. (*Id.* at 20.) Thus, given the officer's reason for the pat-down and the fact that the pat-down was conducted within the restraints of *Terry* the Court finds that the pat-down of the Defendant was lawful.

¶18    Moreover, the events surrounding the lawful pat-down also gave the officer probable cause to conduct a more intrusive search. During the pat-down, the officer asked the Defendant what was in his pocket and the Defendant responded, "I selling". "Admissions of crime carry their own indicia of credibility sufficient at least to support a finding of probable cause to search,"[29] Therefore, not only did the officer's lawful pat-down under *Terry* and the plain feel doctrine warrant seizure of the contraband but the Defendant's admission also gave the officer probable cause to conduct a more intrusive search and seizer of the contraband. Accordingly, the Court will not suppress the contraband seized from the Defendant's person.

---

[29] *People of the Virgin Islands v. Looby*, 68 V.I. 683, 701 (V.I. 2018) *quoting State v. Mena*, 399 So. 2d 149, 152 (La. 1981).

### B. Search of the Defendant's Backpack

¶19    The Fourth Amendment also protects against unreasonable searches of a person's effects.[30]

Generally, a warrantless search of a closed backpack is an unreasonable search under the Fourth

Amendment unless it is justified by an exception to the warrant requirement.[31] One such exception is

a search incident to an arrest.[32] Under the search incident to an arrest exception, it is reasonable for a

police officer to search the arrestee's person and the area within his immediate control to remove

weapons that might be a danger to the officer and to prevent the concealment or destruction of

evidence.[33] "A warrantless search that goes beyond the arrestee's person or area within his immediate

control exceeds the exception and is unreasonable."[34]

¶20    In order to determine whether the search incident to an arrest exception applies to the search of

the Defendants backpack, the court must first determine at what point did the investigatory stop

becomes an arrest. This Court has previously noted that a "bright-line rule" for when an investigatory

stop becomes an arrest has yet to be established, rather lower courts have addressed the issue on a case

by case basis.[35] "In determining when an investigatory stop becomes an arrest, Courts have considered

the diligence of the police in resolving their reasonable suspicion as quickly as possible, the scope and

nature of the restraints placed on an individual's liberty, and whether the police transported the

individual to another location."[36]

¶21    Here, the officer testified that after he finished patting down the Defendant and removing the

contraband from his person. (Tr. at 23.) He then patted the backpack that the Defendant was wearing,

when he felt what he believed to be artistic vials. (*Id.*) As a result, the officer asked the Defendant to

---

[30] U.S. Const. amend. IV.

[31] *United States v. Matthews*, 2010 U.S. Dist. LEXIS 66925 at * (E.D. Pa. July 1, 2010).

[32] *Chimel v. California*, 395 U.S. 752, 763 (1969).

[33] *People of the Virgin Islands v. Santana*, 63 V.I. 25, 34 (V.I. Super. Ct. July 8, 2014) (internal citations and quotations omitted).

[34] *Id.*

[35] People of the Virgin Islands v. Norton, 59 V.I. 121, 131 (V.I. Super. Ct. Oct. 15, 2012.)

[36] *Id.*

take off his backpack. (*Id.*) The officer then opened the backpack and saw what he believed to be artistic vials containing marijuana. (*Id.*) When asked at what point did he place the Defendant under arrest, the officer stated that he arrested the Defendant after he had secured and checked everything. (*Id.*) The Court finds that because the officer did not place the Defendant under arrest after seizing the contraband from his person or transport the Defendant to another location the limited restraint of the Defendant's liberty does not support a finding that the Defendant was under arrest. Therefore, the search incident to an arrest exception is not applicable and the search of the backpack was unlawful. Thus, the contraband seized from the Defendant's backpack shall be suppressed.

## Conclusion

¶22    Having determined that Officer Felicien had reasonable suspicion to conduct an investigatory stop, which then gave him probable cause for a more intrusive search, the Court finds that the officer conducted a lawful search and seizure of the Defendant's person. However, the search of the Defendant's backpack was unlawful under the Fourth Amendment. Therefore, the Court shall grant the Defendant's Motion to Suppress in part and deny the Motion in part. An Order consistent with this Memorandum Opinion shall follow.

**DONE and so ORDERED this ___11___ day of February, 2020.**

**ATTEST:**
Tamara Charles
Clerk of the Court

By: _____
Court Clerk Supervisor

Dated: ___2/19/2020___

_____
HAROLD W.L. WILLOCKS
Presiding Judge of the Superior Court